## PAUL SONS AND MARY SONS v. THEODORE SONS.[1]

February 10, 1922.

No. 22,528.

**Powers of referee to report a judgment.**

1. A referee appointed to report a judgment has substantially the same powers as a trial judge. He may not entertain a motion for a new trial, but has authority to amend or revise his findings until judgment has been entered. If appointed to report the facts, his report has the effect of a special verdict and may not be amended by the trial judge by the substitution of his conclusions upon questions of fact.

**Findings of referee sustained.**

2. The findings of the referee are supported by the evidence as to certain items in the account referred to in the opinion.

**Partnership—compensation for services.**

3. As a general rule, one partner is not entitled to compensation for services performed in the course of the business of the firm in the absence of an agreement therefor, express or implied. The rule is not inflexible or of universal application. Where it can fairly be implied from the course of dealing between the partners, or from circumstances of equivalent force, that a partner was to be compensated, his claim will be sustained.

[1]Reported in 186 N. W. 809.

After the former appeal reported in 145 Minn. 367, 177 N. W. 498, the referee made findings and as conclusions of law found that each of the plaintiffs owned an undivided one-fourth of certain personal property and that Theodore Sons owned one-half of the personal property; that plaintiffs Paul and Mary Sons were entitled to one-fourth of the net proceeds of the sales of produce, hay, grains and live stock from the farm, and that each of the plaintiffs was entitled to recover from Theodore the sum of $6,494.01. Plaintiffs moved to modify the report of the referee, and defendant moved to modify it. The court, Tifft, J., modified certain of his findings of fact and ordered judgment in favor of plaintiffs for $2,182.03. From the judgment entered pursuant to the court's order for judgment, plaintiffs appealed. Modified.

*W. C. & W. F. Odell*, for appellants.

*W. H. Leeman*, for respondent.

LEES, C.

The main facts in this case are sufficiently stated in Sons v. Sons, 145 Minn. 367, 177 N. W. 498.

The referee before whom the accounting was had made findings and order for judgment, with which both parties were dissatisfied. Upon their several motions, the findings were modified by the district judge and judgment entered upon them as modified. Plaintiffs have appealed from the judgment, attacking it on three grounds.

1. At the outset it is necessary to consider a question of practice not alluded to in the briefs of either party. We are of the opinion that the correct practice in cases such as this is indicated in Kelso v. Youngren, 86 Minn. 177, 90 N. W. 316. A referee appointed to report a judgment possesses substantially the same powers as a trial judge. He has authority to revise and amend his findings of fact and conclusions of law until judgment has been entered. He may not entertain a motion for a new trial. His findings stand as the decision of the court and judgment may be entered upon them. The referee in the case at bar made findings and an order for judgment. It is not entirely clear whether his appointment conferred authority upon him to do so. The judgment directed that an ac-

counting be had of the transactions of the partnership and the profits thereof, named the referee and invested him with "such powers and duties as are given to a referee by statute." If this language meant that he was merely to report the facts, he exceeded his powers in making findings and ordering judgment, but, even if his powers were limited, his report had the effect of a special verdict, section 7823, G. S. 1913, and a trial judge may not amend a verdict by substituting his conclusions upon questions of fact for those found by the jury. Miller v. Hogan, 81 Minn. 312, 84 N. W. 40; Schloss v. Lennon, 123 Minn. 420, 144 N. W. 148. Neither party has questioned the authority of the referee to do what he did. Neither have they questioned the power of the district judge to modify his findings. Nevertheless we feel bound to give the referee's findings the same consideration they would receive had they been made by the district judge whose power to modify them is more than doubtful.

2. Wheat was raised on the farm on each of the six years covered by the findings. The quantity so raised was shown by records made when it was threshed. It is undisputed that 7,474 bushels in all were threshed. Plaintiffs contend that defendant received $17,-579.96 from sales of wheat during the six years in question, of which $1,376.65 was for wheat owned by Philip Sons, a brother of these parties, and that defendant is chargeable with the difference. The referee found that he was chargeable with $13,175.40. In arriving at the amount, he deducted 200 bushels a year from the amount threshed, for seed, flour and feed, found the remainder, or 6,274 bushels, was sold at an average price of $2.10 a bushel, and made a charge against defendant accordingly. The district judge reduced the charge to $12,756.51. It would serve no useful purpose to discuss the evidence relating to this item in the account. A careful examination of the record has satisfied us that the referee's finding is fairly supported by the evidence, and hence it should be allowed to stand.

3. The referee found that, during the six years covered by the accounting, the defendant received $900 from the sale of eggs. Plaintiffs contend that a much larger sum should have been charged against defendant for this item in the account. The district judge

reduced it to $600. We think the evidence supports the referee's finding as to this item and it should also be allowed to stand.

4. The referee found that after March 1, 1913, the defendant gave his time to the operation of the farm and that plaintiffs performed no labor and rendered no services in conducting the farming operations during the entire period covered by the accounting. He further found that there was no express agreement that defendant should receive compensation for his services and, therefore, he was not entitled to it. The district judge struck out the referee's conclusion and allowed defendant $2,400. By proper assignments of error, plaintiffs challenge defendant's right to claim compensation in the absence of an agreement therefor. As we read the briefs, the amount allowed is not questioned, if defendant is entitled to anything at all as a matter of law. There is ample evidence in the record to sustain a finding that $2,400 represents the reasonable value of his services. The sole question then is one of law.

The question is one which has been the subject of as much controversy as any other in partnership relations. The general rule is well settled that one partner is not entitled to compensation for services performed in the course of the business of the firm in the absence of an agreement therefor, express or implied. 20 R. C. L. 877; 30 Cyc. 448; note to Williams v. Pedersen, 17 L. R. A. (N. S.) p. 385; Rowley, Partnership, § 350. Do the facts and circumstances disclosed by the evidence justify the conclusion that such an agreement may fairly be implied? The record returned on the former appeal contains the testimony of all the parties. A brief quotation from that given by the plaintiff Paul Sons explains the circumstances under which he and his sister left the farm in 1913. Being asked why he left, he answered:

"He (defendant) was always quarreling with me." * * * "Theo told I had no interest in the farm." * * * "I went and rented a place and took my sister along."

The record also contains a finding that the parties had entered into an agreement to purchase the farm for their common benefit, place their personal property upon it, and use the land and the per-

sonal property together in a common enterprise, to which all were to contribute their time and labor, and in the profits of which they were to share equally; that from the time the land was purchased until March 1, 1913, they lived together on the farm and gave their united services to carrying it on, and that after March 1 the defendant remained in possession of the land and personal property and continued the farming enterprise alone during the six ensuing years. Upon this state of facts it seems to us that defendant comes within a recognized exception to the general rule to which we have referred. In Emerson v. Durand, 64 Wis. 111, 24 N. W. 129, 54 Am. Rep. 593, we find this language:

"The rule that each partner must be assumed to render his services in the partnership business gratuitously, is not flexible or of universal application. It has its exceptions, founded in wisdom and experience. Where it can be fairly and justly implied from the course of dealing between the partners, or from circumstances of equivalent force, that one partner is to be compensated for his services, his claim will be sustained."

In Mondamin Bank v. Burke, 165 Iowa, 711, 147 N. W. 148, we find substantially this statement: An agreement for compensation may be implied from circumstances. It will be implied where one partner has had full charge of the partnership business with the tacit acquiescence of the other, who has devoted his own time and energies to his own personal affairs. It will be less readily implied where both give some degree of active attention to the promotion of the common interests. In Denver v. Roan, 99 U. S. 355, 25 L. ed. 476, it was suggested that, by entering into a copartnership, each partner undertakes to share in the labor necessary to promote the common interests of the firm, this being the very foundation of the right to share in the earnings. It is conceded that he who acts so as to treat the partnership as a nullity as regards his own relations cannot complain if the partnership is so treated for other purposes. Perhaps the rule is different where a partner is excluded from the exercise of his partnership rights and proffers his assistance, which

is rejected by his copartner. Major v. Todd, 84 Mich. 85, 47 N. W. 841.

But this is not such a case. These two brothers quarreled because one claimed the farm belonged to him alone. Instead of staying on and vindicating his rights, Paul went away, taking his sister with him. They located on another farm to which they continuously devoted all their time and energy thereafter. They have retained all the earnings from their independent enterprise. The profits of the farm they left are the fruits of defendant's industry. After March 1, 1913, he alone conducted the joint enterprise. Plaintiffs neither contributed nor offered to contribute their services. The partnership agreement required them to contribute their time and labor equally with the defendant. That was a condition to their right to share in the profits. Under these circumstances we think there is an implied agreement to compensate defendant by deducting the reasonable value of his services from the earnings of the copartnership. When plaintiffs share in the profits, they receive the benefit of defendant's services, and, by receiving the profits, impliedly undertake to make compensation for the services, under the rule that where there is nothing from which a contrary intention or understanding is to be inferred, the law will presume that every man has contracted to perform that which reason and justice dictate. Deane v. Hodge, 35 Minn. 146, 27 N. W. 917, 59 Am. Rep. 321.

It follows from what has been said that the judgment should be modified by adding $179.72 to the amount awarded thereby to each of the plaintiffs, that amount representing their individual shares in defendant's receipts from the sale of wheat and eggs as found by the referee but withheld from them by the modification of his findings made by the district judge, and that in all other respects the judgment should be affirmed.

It is so ordered.