ELLA STARK v. GEORGE STARK AND ANOTHER.[1]

December 31, 1937.

No. 31,333.

[1]Reported in 276 N. W. 820.

*H. H. Bonniwell* and *T. O. Streissguth,* for appellant.

*C. W. Quandt,* for respondents.

HILTON, JUSTICE.

Plaintiff is the widow of Edward Stark, who died March 31, 1933, leaving plaintiff, then pregnant, and five minor children. The defendants are brothers of the deceased. At the time of Mr. Stark's death, he and the plaintiff owned considerable personal property, consisting mainly of livestock, grain, and farm machinery, all of which was heavily mortgaged. Plaintiff was left without funds and in possession of a large farm which had been rented by her husband. Faced alone with the care and support of herself and family, the situation in which she found herself was desperate, and it is doubtful if she could have successfully managed her task during the trying period to follow without help from some source. Life insurance policies held by the deceased were not discovered until some time after his death.

It appears that the defendants, realizing the plaintiff's plight and wishing to assist her as much as possible, held several conversations

with her, attempting to determine what might best be done to assure her and the children of a home and living. Soon after Edward's death the creditors took steps to secure the property on which they held mortgages. The insurance policies were discovered, alleviating somewhat the strain and worry upon the plaintiff but still leaving her in dire need of assistance. The situation resulted in an agreement by the defendants to assist in the management of her affairs, and from that time on they were more or less active in looking out for the plaintiff and her family until discord arose between the parties some two years later. Plaintiff turned over to them the proceeds of the policies, $4,462.80, to be used in the payment of the debts and for other expenditures on her behalf.

At the time of his death deceased held a lease on what is designated as the Abraham farm, on which he and his family were living. Defendants re-leased this farm for the plaintiff for 1933-1934, and farming operations were conducted thereon during the summer of 1933 by the plaintiff, a hired man, and with some aid from the defendants. This lease did not expire until March 1, 1934, but one William Stueber wished to rent the farm, and in the fall of 1933 paid the defendants $60 for plaintiff's lease, upon an agreement that the farm would be vacated October 1, 1933. Defendants thereupon moved the plaintiff, her family, and all of her property from the Abraham farm to the farm home of the defendant George Stark. Plaintiff remained with him until April 1, 1934, when she and her family moved to the Sylvester farm, which defendants had rented during the fall of 1933 for the 1934 and 1935 seasons. The arrangement under which this farm was leased will appear later in the opinion. It was still in the plaintiff's possession at the time this action was commenced in 1935 to secure an accounting between the parties.

During the time the defendants managed plaintiff's affairs they expended considerable sums of money on her behalf. They paid her debts, furnished food and clothing to her and the family, and paid many of the expenses incurred in her farming operations. They also rendered valuable services of a varying nature. The trial was had before the court without a jury and resulted in findings and

conclusions of law determining the rights of the parties. Defendants were charged with all money and property of the plaintiff's which they had received, were credited with all expenditures made on her behalf, and allowed credits for their services. Plaintiff was adjudged to be the owner of certain personal property, the ownership of which was in dispute, and judgment was ordered in her favor for $1,412.15. She thereafter moved for amended findings or a new trial. The court thereupon amended certain of its findings, and after a recapitulation ordered judgment for the plaintiff for $2,098.10, but refused to amend the remaining findings or grant a new trial. This appeal by the plaintiff followed. The law of the case is not in dispute, and as far as possible we shall forego any discussion thereof.

Plaintiff asserts error in the allowance of defendants' claim for $490 as reimbursement and compensation for services rendered and expense incurred in the care of certain livestock and poultry of the plaintiff's. Part of this property was converted by the defendant George Stark prior to the time the acts giving rise to the claim were performed. The court found that the conversion was committed in good faith under a mistaken belief in a right to the property. The question of good faith has a direct bearing on the applicable measure of damages (2 Dunnell, Minn. Dig. [2 ed. & Supps. 1932, 1934, 1937] § 1959) and on the amount of defendants' claim based on the expense and trouble of caring for the property. The parties agree that if the evidence sustains the court's finding the measure of damages applied was correct.

George Stark converted the property by claiming that he was entitled to it. In the absence of anything more, his plea of good faith could hardly be given serious consideration under the circumstances. However, the record reveals that his asserted right thereto was not unqualified. On the contrary, it shows that he was of the sincere and honest, though mistaken, belief that unless and until the plaintiff reimbursed him for moneys advanced and services rendered to her after her husband's death he was entitled to keep the property. In other words, the basis of his claim to the property was an unpaid indebtedness owed him by the plaintiff. The fact

that he was mistaken as to his legal right to keep the property would not necessarily charge him with bad faith in asserting such a right if his belief therein was reasonable and honest. So firm was he in this mistaken belief that he was still entertaining the same idea at the time of and during the trial, but he readily admitted that the plaintiff was entitled to the property if he received what she owed him. There are no facts even remotely indicating an intentional attempt to commit a fraud or wrong on the plaintiff. The suggestion is strong that he was simply ignorant of his legal rights. Under the circumstances, his mistake was not so unreasonable that bad faith will be imputed to him as a matter of law. The question was purely one of fact, and nothing appears in the record which will justify our interference with the trial court's finding thereon. Plaintiff also contends that the court erred in allowing this claim upon another ground, which we will consider in connection with the next error assigned.

Plaintiff insists that the court erred in allowing the defendants $240 for board and lodging furnished to the plaintiff and her family during the six months they lived with George Stark. The basis for her claim is that the relationship between plaintiff and the defendants was such that the presumption of gratuity which exists as to services rendered between members of a family applies (6 Dunnell, Minn. Dig. [2 ed. & Supp. 1937] § 10375) and is not overcome by other evidence. As already indicated, she also urges this as a ground upon which the court erred in allowing the claim hereinbefore considered. She correctly states the rule that in order to overcome the presumption of gratuity it must appear that the services were rendered and support furnished with the understanding of both parties that compensation was to be paid therefor. Johnson v. Kistler, 157 Minn. 217, 197 N. W. 671, 202 N. W. 904; In re Estate of Wood, 167 Minn. 417, 209 N. W. 1. Conceding, for present purposes only, that the relationship between the parties was such that the presumption of gratuity would apply to services rendered to each other, we direct our attention to the sufficiency of the evidence to sustain a finding that the presumption was rebutted.

While there are indications that the defendants were at first

actuated primarily by a desire to help the plaintiff out of her desperate circumstances, there is also very strong evidence, including testimony of George Stark, that payment was expected for expenses incurred and services rendered after the plaintiff's affairs had been put in order. They knew that she was then in a position to pay, and there was no longer any occasion for them to consider any aid or services they furnished as being charitable. There is unquestionably ample support for the conclusion that the defendants expected to be paid for the acts relied upon as the basis for these two claims.

That the plaintiff expected to pay likewise clearly appears from her testimony. She testified that on one occasion she asked George Stark's mother, who was also living in his home, how much she owed for the board furnished. This testimony alone is sufficient to sustain a finding that she expected to be charged and to pay for the keep of her family and herself. With reference to the board and room and also the care of her property, when questioned about her expectation of paying therefor, she testified that she figured the income from her cattle and other farm stock and the grain and other feed belonging to her which the defendants used would "even up" those matters. In other words, she expected to pay for their services by giving them the income and use of her property. But the defendants were not paid in this manner. In the accounting below, they were charged with both the income from her property and also the full value of that used by them. Thus, while all parties understood that the defendants were to be paid, such payment has not been made. There was no error in the allowance of either claim.

The defendants were allowed a credit of $100 for the use of certain farm equipment furnished and labor performed by them in the operation of the Abraham farm. George Stark admitted that he had not expected to be paid for these services, and the testimony of defendant Willie Stark leads to the same conclusion. In view of this testimony, which the learned trial judge apparently overlooked, there is no room for a finding that they were entitled to credit for this claim, and its allowance was error. Under the circumstances, there is nothing inconsistent with their intention of rendering these

services, involving little or no expense, gratuitously, and an expectation of being paid for those rendered at a subsequent time.

There was also error in allowing the claim of Willie Stark for $75 as compensation for plowing done by him on the Sylvester farm. This farm was rented by the defendants under an agreement between plaintiff and Willie Stark to operate the farm together and share the crops equally after the rent of the farm and expenses incidental to its operation were paid. This was substantially a partnership agreement between the parties for the operation of the farm. Plaintiff was charged with her share of the rent and expenses and, in turn, was credited with her share of the proceeds. The plaintiff's son, a man hired by Willie Stark, and the parties themselves, "all worked together" in the operation and management of the farm. The general rule is that one partner is not entitled to compensation for services performed in the course of the partnership business, in the absence of an agreement therefor, express or implied. Sons v. Sons, 151 Minn. 334, 186 N. W. 809. In rendering such services, a partner is furthering his own interests and business and performing his duties arising out of the partnership. Aside from other reasons, the obvious difficulty of estimating and equalizing the relative value of the services of the partners and determining to what extent their comparative knowledge, skill, and industry contributed to the successful operation of their enterprise is sufficient justification for the rule, and illustrates well the soundness of the policy upon which it is based.

The plowing done by Willie Stark is not to be considered as an expense of the partnership and thus within the terms of the express agreement of the parties, at least in the absence of circumstances showing clearly that they were intended to be included as such. Neither is there any evidence from which an implied agreement can be found, as was done in Sons v. Sons, 151 Minn. 334, 186 N. W. 809. He is no more entitled to compensation for his services than is the plaintiff for those rendered by her and her son in assisting on the farm.

There was no error in allowing the defendants credit for fodder corn and hay furnished by Willie Stark in the operation of the

Sylvester farm. It was properly considered as an "expense," and plaintiff was chargeable with her share thereof.

Error is assigned on an allowance of $328 to the defendants, this amount being a credit for a payment made to Charles Stark, another brother of deceased, to satisfy a certain note for $300 and interest, secured by a mortgage on four horses. These instruments were executed by the deceased about a year prior to his death. They were not signed by the plaintiff. She testified that the horses belonged to her and were mortgaged by her husband without her knowledge or consent, and claims as a result that the mortgage was not valid as against her, and defendants are therefore not entitled to credit for the amount paid to satisfy the same. The trial court found that plaintiff was the owner of the horses at the time of her husband's death and "that in paying to Charles Stark the sum of $300 in settlement of the note of said Eddie Stark the defendants acted with the knowledge, consent and authority of the plaintiff herein."

Counsel has not directed our attention to any evidence to sustain the finding that the defendants acted with the knowledge, consent, and authority of the plaintiff in paying this amount, and a diligent search of the record has failed to reveal such evidence. True, it is clearly established that the defendants paid the $328 principal and interest due by turning over $275 in cash and giving the mortgagee title to one of the horses covered by the mortgage for the balance of $53. But there is no evidence whatever that they in any way consulted with the plaintiff about the note and mortgage or secured any authority from her to pay the amount due thereon. On one occasion after Mr. Stark's death, a Mr. Schmitz was at the farm to see about a mortgage held by the bank of which he was president. In a conversation then held between him, the plaintiff, and George Stark as to what should be done, plaintiff told the latter to "take this over." Other creditors were at the farm that day. What the plaintiff meant by her words is not clear, and the evidence relating to what took place on this occasion is very unsatisfactory. It is certain, however, that under the circumstances no authority from her to the defendants to pay the Charles Stark mortgage can be

spelled out of these words without some showing that they were spoken with reference thereto and were intended to have that effect. There is nothing to indicate that this mortgage had in any way been discussed during the conversation or that there was any connection between the mortgage and plaintiff's words. The probability is that she was referring only to the indebtedness to the bank and the other claims which were the subject of the conversation.

There is no finding that the mortgage was valid as against plaintiff's claim of ownership of the horses, and no finding as to the ownership thereof at the time the mortgage was given. If deceased owned the horses at the time he gave the mortgage, they would be subject to it, although the plaintiff later acquired them from him, and in view of the general nature of defendants' authorization to manage her affairs, the circumstances might warrant a finding that they had implied authority to pay the indebtedness in question. However, unless the mortgage was valid against her, proof that she authorized the satisfaction thereof would have to be much stronger and clearer than that disclosed by the record herein. The case would be exceptional in which an implied authority to an agent could be found authorizing the payment and release of a claim which was not valid against his principal. In such a case there must necessarily be definite evidence that he acted with the consent and authority of his principal.

Errors previously discussed may be corrected by simple amendments to the findings and conclusions of law. However, the evidence is such that there must be a new trial on the question of the rights of the parties with reference to the satisfaction of the Charles Stark note and mortgage. Possibilities other than those indicated are not to be overlooked on the second trial. The mortgage may have been valid against the plaintiff upon some ground other than the one mentioned, such as an estoppel operating against her in favor of a *bona fide* mortgagee. And aside from the question of defendants' authority to satisfy the debt and mortgage, if in doing so they acted in good faith and the mortgage was valid against the plaintiff upon any ground, an additional issue as to whether they should be subrogated to the right of the mortgagee may arise.

500

These suggestions are not to be taken as expressing any opinion on the substantive rights of the parties. The determination of those rights must necessarily depend upon the facts disclosed on the second trial.

Under the circumstances, a conceded error of $53 in the amount allowed for the satisfaction of the Charles Stark note and mortgage requires no comment. The same is true of two additional errors of $4.10 and $60. The first is also conceded, and the second is just a matter of addition. They may be corrected by the court on the remittitur.

All errors assigned have required a close study and analysis of the evidence. Those remaining attack a large part of the findings based mostly on conflicting evidence and relate to the sufficiency thereof to sustain findings of the existence of debits and credits to which the defendants were entitled, and the amounts allowed. We refrain from further comment thereon other than to state that they have been considered and found to be without merit.

The order appealed from is reversed with directions to amend the findings and conclusions of law to accord with the views expressed in the opinion, and a new trial is granted, confined solely to the limits indicated herein.

