Dennis L. SHARP, et al., Respondents,

v.

Charles M. LAUBERSHEIMER, et al., Appellants.

No. C1-83-118.

Supreme Court of Minnesota.

April 20, 1984.

Robert B. Varco, Anoka, for appellants.

Felix A. Mannella, Blaine, for respondents.

PETERSON, Justice.

This is a partnership dissolution action brought by plaintiffs Dennis Sharp and Lindy Zelinsky against defendants Charles Laubersheimer and Kenneth Salo for alleged wrongful withholding of partnership assets. Plaintiffs and defendants were general partners in Maple Investments, a real estate partnership. The trial court found that defendants withheld $104,000 of partnership assets in violation of partnership and joint venture agreements, thereby effectively precluding plaintiffs from carrying on the business of the partnership. Pursuant to the provision of the Uniform Partnership Act regarding the allocation of partnership property upon dissolution, Minn.Stat. § 323.37 (1982), the court awarded plaintiffs $9,744.05 for various damages resulting from defendants' breach of the partnership agreement. The court also awarded plaintiffs $60,000 in damages under a quasi-contract theory of recovery for services rendered to Maple and Dalan Builders, Inc. (Dalan), a close corporation consisting of Dennis Sharp, Lindy Zelinsky, and David Neuman as shareholders. Finally, the trial court terminated defendants' interests in Maple and dissolved the partnership as to defendants. Accordingly, the trial court permitted plaintiffs to continue the business of Maple Investments. We affirm in part and reverse in part.

In July 1976, Sharp, Zelinsky, and Laubersheimer entered into a written agreement to form the general partnership of Maple Investments. Shortly thereafter, Salo joined as a fourth partner with the consent of the three original partners. Sharp contributed land valued at $50,000; Zelinsky, Salo, and Laubersheimer made cash contributions of $10,000, $10,000, and $5,000, respectively. The partnership agreement did not provide for compensation to the partners for services rendered to Maple.

On July 11, 1979, all of the partners gave written authority for the establishment of a checking account at the First National Bank in Anoka, Minnesota (bank). This authority provided that only partners Sharp and Zelinsky could withdraw funds from the account. No other checking or savings account was authorized by the Maple partners.

Immediately after Maple was formed, the partners unanimously entered into a joint venture agreement with Dalan. This agreement provided for the construction of commercial warehouses on the partnership property. Subsequently, three warehouses were constructed with Sharp acting as managing partner.

The Maple partners subsequently discussed using the proceeds from the sale of the third warehouse to build a fourth warehouse. After Sharp made numerous unsuccessful attempts to procure financing for the construction of the fourth warehouse, the partners agreed to the sale of the third warehouse. The first closing on the warehouse was aborted because of title problems. Prior to the second closing, the Maple partners and David Neuman met to discuss complaints Neuman had regarding his interests in Dalan. Defendants questioned Sharp on the Neuman dispute but were told that it did not concern them. Before the meeting ended, all of the Maple partners agreed that Laubersheimer would deliver a properly executed warranty deed at the second closing and deposit the proceeds in Maple's checking account. The proceeds were to be used to pay a $35,000 loan at the bank. The balance was to be kept in the partnership account until Maple's partners decided on the future of the warehouse project.

Laubersheimer later attended the second closing and exchanged the revised warranty deed for a check in the amount of $104,000. Upon receiving the proceeds, Laubersheimer did not deposit them in Maple's checking account. Instead, he established a new 5¼% savings account in Maple's name at the bank. Only defendants could withdraw proceeds from this new account. Plaintiffs did not consent or authorize the establishment of this separate partnership savings account.

When defendants refused to release the $104,000 of partnership assets, plaintiffs commenced this action to recover the assets and dissolve the partnership with respect to defendants. As a result of defendants' retention of the $104,000, Maple did not pay a $35,168.83 promissory note owed to the bank by the partnership. The bank subsequently exercised its right of set-off against the $104,000 in the savings account. At trial plaintiffs requested that the remaining proceeds in the separate savings account be returned to Maple, that an accounting be made, and that Sharp, Zelinsky, and Dalan be reimbursed for numerous expenditures, costs, and damages suffered because of defendants' wrongful retention of the partnership assets.

After receiving evidence, the trial court made an accounting of Maple's assets and liabilities and determined that defendants' equity interests amounted to $96,470.83. This amount included the return of their capital contributions of $15,000 pursuant to Minn.Stat. § 323.39 (1982) and *Johnson v. Johnson*, 277 N.W.2d 208, 213 (Minn.1979). The court reimbursed plaintiffs $7,954.04 for interest, finance charges, and late penalty payments on various partnership debts that had to be refinanced because of defendants' wrongful withholding of Maple's assets. The court also imposed a quasi-contractual obligation upon defendants to reimburse Sharp $60,000 as compensation for services rendered to Maple and Dalan. Accordingly, the court subtracted the $67,954.05 owed in damages from defendants' $96,470.83 equity interest in Maple and ordered that plaintiffs pay $28,516.78 to terminate defendants' interests in the partnership.

After the trial court issued its findings, conclusions, and order for judgment, both parties moved for amended findings and conclusions, and defendants moved for a new trial. On reconsideration, the court denied defendants' motions, granted plaintiffs' motion, and incorporated the following changes. Defendants' equity interest in Maple was redetermined to be $81,118.12 rather than $81,470.83. The court also granted plaintiffs' request for reimbursement of accounting expenses in the amount of $1,790. Thus, the court ordered plaintiffs to pay defendants $25,374.07 representing defendants' equity interest and capital return of $96,118.12, minus dam-

ages of $69,744.05 due plaintiffs for interest penalties, accounting expenses, and compensation.

We affirm the trial court's rulings in all respects, save one.[1] We reverse the trial court's award of $60,000 compensation to Sharp for services rendered. We hold as a matter of law that the trial court erred when it awarded Sharp, a partner under an express partnership agreement, reimbursement for services rendered on a theory of quasi-contract when the partnership and joint venture agreements did not expressly provide for such compensation.

The partnership and joint venture agreements in this case did not provide for compensation to the partners of Maple or the shareholders of Dalan. According to the partnership agreement, each partner was required to contribute reasonable time and attention to the business and affairs of the partnership. Apart from the partners sharing Maple's profits in accordance with their ratio of partnership units, no other form of remuneration is mentioned. Since the partnership agreement is silent regarding compensation, the Minnesota Uniform Partnership Act does not allow plaintiffs to be reimbursed for services rendered on behalf of the partnership. Minn.Stat. § 323.-17 (1982) provides in pertinent part:

> The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:
>
> \* \* \* \* \* \*
>
> (6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.

*Id.*

The joint venture agreement between Maple and Dalan expressly bars reimbursement for work performed in the planning and construction of the warehouses. Similar to the partnership agreement, the joint venture agreement provides for income distribution in accordance with the parties' ownership ratio. Thus, both agreements and the Minnesota Uniform Partnership Act fail to provide that partners be reimbursed for services rendered on behalf of the partnership or joint venture.

Moreover, in *Breza v. Thaldorf*, 276 Minn. 180, 149 N.W.2d 276 (1967), we stated that "[i]t is fundamental that proof of an express contract precludes recovery in quantum meruit." *Id.* at 183, 149 N.W.2d at 279. Because there was an express contract in this case, the trial court's award of compensation under a quasi-contract or an unjust enrichment theory, which in essence amounted to an award in *quantum meruit*, was contrary to well-established Minnesota case law. *See also Stark v. Stark*, 201 Minn. 491, 497, 276 N.W. 820, 823 (1937) (a partner's services, performed on behalf of the partnership, are not compensable in the absence of an express or implied agreement to the contrary); *Sons v. Sons*, 151 Minn. 334, 337, 186 N.W. 809, 810 (1922) (same).

We therefore reverse the trial court's award of $60,000 to Sharp for services rendered and remand with direction to order judgment consistent with this opinion (the effect of which is that plaintiffs shall pay defendants $86,374.07, representing the value of defendants' interest in the partnership after the $9,744.05 damages due plaintiffs are deducted from defendants' combined equity and capital interest of $96,-118.12).

Affirmed in part and reversed in part and remanded with directions.

---

1. Plaintiffs argued at trial and on appeal that they are entitled to lost profits, punitive damages, attorney fees, and additional secretarial expenses beyond those damages awarded by the court. With respect to these alleged damages, we affirm the trial court's well-reasoned memorandum rejecting plaintiffs' claims. We also affirm the trial court's ruling that Dalan Builders, Inc. and David Neuman were indispensable parties.