MONDAMIN BANK, Appellant, v. W. J. BURKE, Appellee.

**Partnership:** SERVICES OF PARTNER: COMPENSATION: EVIDENCE. Generally speaking a partner cannot recover for services rendered the partnership in the absence of an express agreement to that effect; but there may be circumstances from which an agreement can be fairly implied. Thus where one member of a banking firm gave his time and attention to the active management of the business for a long series of years, while the other members of the firm tacitly or expressly acquiesced therein and devoted their time to their own private affairs, an agreement to compensate may be more readily implied than when all were giving some or equal attention to the business; and these facts, when taken in connection with other proven circumstances in the instant case indicate a mutual, though unexpressed, understanding that defendant's services were to be compensated, and to require submission of the issue.

**Same:** EVIDENCE: COMMUNICATIONS WITH DECEDENT. In an action by one partner against his firm for compensation, the only issue being an implied contract to pay for his services, his testimony that he told one of the partners what a deceased partner had said about his compensation, the purpose not being to show what the deceased partner had said but to show that the living partner understood defendant was expecting compensation, was properly admitted.

**Appeal:** ASSIGNMENTS OF ERROR. Assignments of error involving the admission of evidence and the giving or refusal of instructions should clearly indicate and point out the errors complained of; the court will not search the record to ascertain whether there is something upon which error can be predicated.

**Pleadings:** AMENDMENT. Any error in allowing an amendment to the answer and counter claim at the close of the trial was harmless, where the court submitted the case on no issue not fully involved in the original pleadings.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, MAY 12, 1914.

ACTION at law to recover an amount of interest alleged to have become due and payable to plaintiff upon certain

promissory notes and renewals thereof. There was a trial to a jury, and verdict and judgment for defendant. Plaintiff appeals.—*Affirmed.*

*J. S. Dewell* and *Ross McLaughlin,* and *S. H. Cochran* and *M. L. Barrett,* for appellant.

*C. W. Kellogg* and *John P. Organ,* for appellee.

WEAVER, J.—Prior to December, 1899, there had been organized and was then in operation in the city of Missouri Valley a banking corporation known as the State Savings Bank. Among the persons interested in said bank were Fred Schwertley, W. H. Smith, J. S. Dewell, John Young, and the defendant Burke, who was also cashier. In the month last named all the persons holding stock in the savings bank united as partners to carry on a banking business at Mondamin in the same county; said stockholders contributing to the capital of the partnership each in proportion to his holding of shares in the savings bank. Burke, the cashier, who was the active manager of the bank at Missouri Valley, appears to have been also the moving spirit in organizing and establishing the partnership bank at Mondamin. The ordinary or daily charge of the latter bank was committed to a clerk or assistant under the immediate oversight and direction of Burke acting as the real head and manager in the interests of the partnership. Burke transacted the business in establishing the bank, buying supplies and employing and discharging help. He frequently visited the bank, instructing and directing the assistant. He also at times took personal charge of the bank for a day or two when the assistant was absent. He looked after the loans made. The assistant made weekly reports to him. Other members of the partnership seem to have relied upon him to attend to these duties. This condition of affairs continued until October, 1911, when

Burke sold out his interests in both banks to Smith, one of the partners, who was also a stockholder in the savings bank. About the same time Smith, who had acquired all the other interests in the Mondamin Bank, sold a half interest therein to McAvoy, who for several years had been the assistant at Mondamin. At the time of this change in its ownership the Mondamin Bank held among its bills receivable the promissory note of Burke for the principal sum of $5,000 and soon after that transaction Burke paid said principal sum to McAvoy, without interest, and McAvoy delivered the instrument to him. To a proper understanding of this transaction it is necessary to go back over the partnership business from about March 1, 1905. On or about that date Burke drew from the Mondamin Bank the sum of $5,000, and made and placed among its bills receivable his own note for that sum, with 6 per cent. interest payable in one year. On or about December 16, 1909, Burke took up said note, giving another for the same amount in place thereof, but paid no interest, saying and explaining to McAvoy that he was entitled to an amount equal to said interest for his services in managing and caring for the business. A similar claim was made by him when he came to pay and take up the last note, and upon the strength thereof McAvoy delivered up the paper. A further fact appears which, while not necessarily inconsistent with the claim or defense in this action, is not without value as affording a side light upon the controversy. The personal relations between Smith and Burke appear to have been somewhat strained for a considerable period. Soon after Smith had acquired all of Burke's interests in the savings bank and the Mondamin Bank, Burke purchased an interest in a competing bank at Missouri Valley and became its cashier. He also contemplated opening a competing bank at Mondamin, and it was not until after friction thus occasioned had arisen that a demand was made upon Burke for payment of the interest on the loan of $5,000,

reckoning from the date of the original note. Payment being refused, this action was begun to recover the same.

Answering plaintiff's petition defendant admits giving the notes and the indebtedness thereby represented, and alleges that said indebtedness has been fully settled and paid. Further, and by way of counterclaim, he pleads the facts as to the organization of the partnership and his own exclusive management of its business in the interest of said partnership and the existence of an implied contract between the partners for payment to him of the reasonable value of such service, which he alleges to have been $300 per year. By way of reply plaintiff, while admitting that defendant did take charge and control of the Mondamin Bank, denies that it was so done pursuant to any agreement with the other partners, and denies there was any agreement, express or implied, for payment for such services. It is further alleged, in substance, that defendant's salary as cashier of the savings bank was fixed and adjusted with reference to his entire service, and that the payment of such salary was in full compensation for all the time and labor given by him for the common benefit of the common owners of both banks. It is also pleaded that the interest on said notes was allowed to go unpaid, and that they were delivered up by McAvoy only because he was misled and deceived by defendant's false representations concerning the indebtedness of the partnership to him for services.

These issues were tried to a jury, and, as already indicated, there was a general verdict for defendant, and judgment against plaintiff for costs. In submitting the case to the jury the court limited the defense to the plea of an implied contract by which defendant was to receive reasonable compensation for his services and to the application of any amount so found due the defendant to the payment or reduction of plaintiff's claim for unpaid interest.

I. It will be seen from the foregoing statement that when reduced to brief terms the principal issue to be deter-

mined is a very narrow one. The fact of giving the original
note, its renewal and final payment of the
principal sum by the defendant, is conceded.
It is also conceded that the interest has never
been paid unless it is to be held paid and
canceled by a credit due the defendant for his services. There
is no dispute in the evidence as to the value of defendant's
services if, as a matter of fact or law, he is entitled to
charge the same as a valid claim against the partnership.
We are thus brought to the single inquiry whether, under the
evidence in the record and the rules of law applicable thereto,
a verdict finding the existence of such implied contract can
be sustained. That this must be answered in the affirmative
we have no doubt.

*1. PARTNERSHIP: services of partner: compensation: evidence.*

Appellant appears to insist upon the theory that a part-
ner may recover for services in the partnership business only
where an express agreement to that effect is shown, but it
is thoroughly well established that such recovery may be
sustained where there are circumstances from which an
agreement may fairly be implied. See *Mattingly v. Stone*
(Ky.), 35 S. W. 921; *Levi v. Karrick,* 13 Iowa, 344; *Hoag
v. Alderman,* 184 Mass. 217 (68 N. E. 199); *Emerson v.
Durand,* 64 Wis. 111 (24 N. W. 129, 54 Am. Rep. 593);
*Bradford v. Kimberly,* 3 Johns Ch. (N. Y.) 431.

It is true that no such obligation arises or is implied
from the mere fact that the partner demanding compensa-
tion has given to the business more time, labor and atten-
tion than the others, but it is equally true that, where one
partner has had full charge of the partnership business, at-
tending to practically all its affairs while the other part-
ners have tacitly or expressly acquiesced therein and de-
voted their own time and energies wholly to their personal
affairs, an agreement to compensate the active partner will
be much more readily implied than where all the partners
are also giving some degree of active attention to the pro-
motion of the common interest. Some consideration must

be given to the reasonableness or unreasonableness of the claim of a partner that he rendered extraordinary service under an understanding or expectation of receiving compensation therefor from the firm.

In *Levi v. Karrick, supra,* after stating the general rule that compensation is not allowable, this court added: "But like many general rules, experience has shown, . . . that it is not inflexible. That is to say, if an agreement that the partner shall be paid for his services can be fairly and justly implied from the course of business between the copartners, he is entitled to recover." In the same case, as tending to sustain the claim there made, it is noted that the plaintiff acted as the superintendent of the partnership business with the knowledge and consent of all the partners; that the employment of laborers devolved upon him; that he superintended the books and performed other important duties, and after a review of these facts the court further says: "In a word, we think it equitable and just, and entirely in accordance with the understanding of the parties, that he should be paid."

In *Morris v. Griffin,* 83 Iowa, 327, the fact that one partner left the business wholly in charge of the other while he himself, for a large part of the time, was pursuing a private employment was given weight, and this court again sustained the claim of an implied agreement to pay the active partner, saying, "It would certainly be unreasonable that the parties expected the defendant to render these years of service without any compensation." So in *Emerson v. Durand, supra,* the court considered a claim of this kind, and, after reciting to considerable length the evidence showing how fully the actual management and control of the partnership business was left to the claimant, while the other partner only occasionally gave it his personal attention and was engaged in other business, the opinion proceeds: "When these facts, and others of a like tendency, are considered, they afford, to our minds, sufficient ground for implying a con-

tract to compensate the plaintiff for his services in the management of the business.''

In *Hoag v. Alderman, supra,* the Massachusetts court, while affirming the general rule that the services of a partner for the firm are presumed to be rendered without special compensation, says: ''The partnership may be of a peculiar kind, and the arrangements and the course of dealing of the partners  .  .  .  may be such as pretty plainly to show an expectation and understanding, without an express agreement  .  .  .  that certain services of a partner should be paid for.''

In the case before us there is nothing on the face of the record to indicate that by the terms of the partnership agreement defendant was under any greater obligation to give his time and service to the supervision and management of the Mondamin Bank than were his partners. But it does appear that they were men who did not live at Mondamin, and presumably had other business and other interests which absorbed their attention. They left this work entirely to the defendant, who seems to have performed the duty efficiently and with marked success for a period of eleven years. As already suggested, this fact alone might not be thought sufficient to imply an agreement for compensation, yet the equity and reasonableness of such an understanding or arrangement is so manifest that when the claim is supported by other credible testimony a court or jury might well reach the conclusion that the services were rendered upon the mutual though unexpressed expectation and understanding of all concerned that they were to be paid for. There is here evidence tending to show that at or about the time the partnership was organized the matter of the management and supervision of the business by the defendant was a subject of conversation between him and the other partners, or some of them and while there is no claim on his part that any stated compensation was agreed upon, it was sufficient, if the jury believed the evidence, to have jus-

tified a finding that the partners must have understood and
expected that defendant should have reasonable compensa-
tion. Indeed plaintiff's own theory in resisting defendant's
counterclaim is fairly open to the same construction, for,
while denying his right to- the amount claimed by him in
this action, the denial is grounded, not so much upon the
theory that as the managing partner he was entitled to no
compensation, as upon the further proposition that the de-
fendant was at the same time cashier of the savings bank
at Missouri Valley, the stock of which was owned by the in-
dividual partners in the Mondamin Bank, and that his sal-
ary as cashier of the savings bank -was fixed and adjusted
upon the theory of full compensation for his services in both
positions. In other words, while tacitly conceding defend-
ant's right to compensation for services at Mondamin, it is
pleaded and insisted that he has received the same in full in
the manner here indicated. This issue was raised by the ap-
pellant in its reply to the counterclaim, and under instruc-
tions quite favorable to the plaintiff' the jury has found the
disputed fact in defendant's favor. The finding is not with-
out support in the evidence, and upon this appeal it must
be accepted as final.

Indeed most of the propositions urged upon our atten-
tion are those of fact, and the verdict thereon is not subject
to our review or control, except to inquire whether it has
support in the record. We have examined the record with
care, and are satisfied that the evidence is sufficient to sus-
tain the action of the trial court in refusing to dispose of
the issues as matters of law.

II. One Schwertley was a principal contributing part-
ner in the organization of the Mondamin Bank, but had died
before the trial of this case. Defendant sought to testify
to a conversation with Schwertley bearing
upon the payment to the defendant by the
firm of compensation for his services. The
evidence was excluded upon plaintiff's objection to its com-

2. SAME: evi-
dence: com-
munications
with decedent.

petency and the competency of the witness.    He was permitted, however, to testify that he told Smith that Schwertley had said it was all right if he (defendant) did not charge too much, and that Smith replied that he would be satisfied with anything that satisfied Schwertley.    The admission of this testimony is objected to on the ground that defendant was incompetent to testify to what had been said to him by the deceased partner, and that his testimony concerning what he told Smith enabled him to get to the jury the very matter which the court had before excluded.    Conceding, for the purposes of this case, but not deciding, that the objection to the competency of the defendant to testify to his conversation with Schwertley was well taken, we are disposed to hold that the testimony as to the conversation with Smith was properly admitted.    The offer of this latter evidence was manifestly not intended to develop what Schwertley had said, but to show that Smith understood that defendant was expecting compensation for his services, and that Smith apparently acquiesced therein.    The offer is not within the latter or spirit of the statute, and the objection was properly overruled.

Most of the objections to rulings on evidence are entirely too general to present any point for our decision.    For example, the trial court is alleged to have committed error in "allowing the testimony of J. E. Murphy, as

3. APPEAL: assignments of error.    shown on pages 50 and 51 of the abstract, all of said testimony being immaterial, irrelevant, and incompetent."    In the same way error is said to have been committed in allowing defendant to answer "all questions on redirect examination, as shown on pages 48 and 49 of abstract," also in not giving "the instructions asked by the plaintiff, as shown on pages 73 to 75."    Some five or six other exceptions are of the same indefinite character.    On turning to the pages indicated, it is seen that the matter objected to involves answers to numerous questions and requests for numerous instructions.    This court has often said

that such general assignments are insufficient, and that it
will not undertake to sift through pages of record, thus sweep-
ingly indicated, to ascertain whether concealed somewhere in
the mass is something on which error may be predicated. We
have, however, in this instance read the entire record, and
are satisfied that it reveals no reversible error. Most of the
points made are sufficiently covered by what we have said
in the first paragraph of this opinion, and there is no occa-
sion for their further discussion.

Considerable is said in argument to the effect that the
act of the defendant in borrowing the $5,000 from the bank
and giving his note therefor was unauthorized, and that the
existence of the note was concealed from Smith by McAvoy
at defendant's request. As to this latter matter, there is a
conflict in the evidence, and we cannot, upon this appeal,
take its truth as established, and whether the loan was author-
ized is not now a material consideration. The plaintiff has
ratified the act by bringing this action upon the notes, and
the question of defendant's authority in that respect has no
bearing upon the validity of his claim for compensation for his
services.

Exceptions taken to the instructions given and to re-
fusals of requests presented by the plaintiff proceed very
largely upon the theory that there was an entire failure of
the evidence in support of defendant's claim for compensa-
tion, but, as already pointed out, the court cannot concur in
that view of the record. The charge given by the trial court
was carefully framed to protect the plaintiff's rights. Al-
though in view of the cancellation of the note, it is to say
the least, a fair question for argument whether the burden was
not upon the plaintiff to show that such surrender had been
made without consideration, the court charged the jury that
the defendant must make good his defense by a preponder-
ance of the evidence. It also charged that, in the absence
of evidence to the contrary, the presumption obtains that a
partner's service in the business of the firm is rendered with-

out compensation, and that to recover therefor facts and circumstances must appear fairly indicating an expectation or understanding between the parties that payment would be made. We must presume that the jury gave heed to these directions and found against the plaintiff upon all the material facts in issue. It is said the instructions are too voluminous and confusing, but the criticism is not well founded. While the ultimate fact in issue was simple and easily stated, much collateral matter having a bearing thereon was brought into the record by both parties and laid before the jury. To avoid confusion and to keep the investigations of the jury in proper channels it was necessary for the court to state the law with considerable minuteness. In our judgment this duty was performed by the court with a fairness and discretion which leaves no room for just exception.

Of the objection made to the allowance of an amendment to the answer and counterclaim at the close of the trial it is enough to say that the court submitted the case to the jury upon no issue which was not fully involved in the pleadings as they were originally filed. In other words, even if the amendment should not have been made, the error was clearly without prejudice.

4. PLEADINGS: amendment.

We find in the record no error requiring a new trial, and the judgment of the district court must be affirmed. Costs will be taxed to the appellant, except cost of printing amended abstract, which will be taxed to the appellee.—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concurring.