# IN THE COURT OF APPEALS OF IOWA

No. 14-0503
Filed February 11, 2015

SUSAN KIZER and SERENITY SALON
AND SPA, INC.,
    Plaintiffs-Appellants,

vs.

KIM SIEVERS,
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Buena Vista County, Carl J.

Petersen, Judge.


    Susan Kizer and Serenity Salon and Spa, Inc. appeal from the district

court's ruling dissolving the corporation and denying Kizer's claim of breach of a

purchase agreement. **AFFIRMED IN PART, REVERSED IN PART, AND**

**REMANDED WITH DIRECTIONS.**


    Gregory N. Lohr of Baron, Sar, Goodwin, Gill & Lohr, Sioux City, for

appellants.

    Gina C. Badding of Neu, Minnich, Comito & Neu, P.C., Carroll, and Dan

Connell of Dan Connell, P.C., Storm Lake, for appellee.


    Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, C.J.**

Susan Kizer and Serenity Salon and Spa, Inc. appeal from the district court's ruling dissolving the corporation and denying their claim of breach of a purchase agreement by Kim Sievers. Kizer[1] contends the court inappropriately dissolved the corporation and considered a director's breach of fiduciary duties. Kizer also contends Sievers breached the stock purchase agreement and guaranty, and further, that the district court erred in finding an oral contract existed. We conclude the personal guaranty is unenforceable due to a failure of consideration. The trial court erred in dissolving the corporation, a remedy not requested and unnecessary, and we remand to revise the judgment entry, but we otherwise affirm the settlement of the rights and obligations of the parties.

### I. Scope and Standard of Review.

The parties express some ambivalence as to the scope of review. However, despite ancillary requests for equitable relief,[2] this is essentially a breach-of-contract action, which was tried at law.[3] *See Collins Trust v. Allamakee Cnty. Bd. of Supervisors*, 599 N.W.2d 460, 463 (Iowa 1999) ("Generally, our review of a decision by the district court following a bench trial depends upon the manner in which the case was tried to the court."). We review law actions for errors of law. Iowa R. App. P. 6.907.

---

[1] While we recognize the appellants are nominated Kizer and Serenity, for simplicity's sake we refer to them collectively as Kizer.

[2] *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007) ("The fact that injunctive relief was sought is not dispositive of whether an action is at law or in equity, as an injunction may issue in any action." (citation, quotation marks, and alterations omitted)).

[3] The trial court wrote, "The parties stipulated to waive the jury and present this proceeding at law to the court."

**II. Background Facts and Proceedings.**

Kizer is a licensed cosmetologist having graduated from Faust Institute in 1999. Kizer opened Serenity Salon & Spa, Inc. in 2003. Kizer's daughter, Karla, worked at Serenity after graduating from cosmetology school. Kizer initially operated the salon at Lake Avenue in Storm Lake and moved to its current location at 323 East Milwaukee. Kizer, as president of Serenity, signed a five-year lease for that location on July 1, 2007. Rent was $12,018 per year, payable in monthly installments of $1001.50.

Kizer incorporated this entity under the name Face @ Total Concept, but amended the name of the corporation to Serenity Salon & Spa, Inc. (Serenity) in 2004. Serenity's report to the secretary of state filed in 2004 listed Kizer as the president and her husband, Mrylon, as a director. In 2005, Serenity's report listed Karla as secretary, Mrylon as director, and Kizer as president. In 2008, Serenity's report indicated there were "no directors" and listed Kim Sievers as secretary and Kizer as the president of the corporation.

In early 2008, Kizer had approached Sievers, a client, with a proposal that Sievers purchase Karla's portion of Serenity. Kizer and Sievers met on two occasions to discuss the purchase; at one meeting their husbands were also present.

On April 8, 2008, two documents drafted by Kizer's attorney, Ted Brown, a stock purchase agreement and a personal guaranty, were executed. The stock purchase agreement provides:

> This agreement is entered into by and between Serenity Salon & Spa, Inc. hereinafter referred to as "Corporation," Susan

Kizer hereinafter referred to as "Kizer," and Kim Sievers hereinafter referred to as "Sievers" upon the following terms and conditions:

1. Presently Kizer is the sole shareholder in the Corporation, holding 50 shares of stock in the same.

2. Sievers desires to purchase 50 shares of stock from the Corporation so that she will be an equal shareholder with Kizer.

3. The Corporation presently has corporate debt incurred at Central Bank of Storm Lake, Iowa, which has been presently guaranteed by Kizer. Kizer and the Corporation agree that 50 shares of stock shall be issued to Sievers upon the condition that she personally guarantee to the Corporation and to Kizer the payment of $ 60,000.00 of corporate debt to Central Bank of Storm Lake, Iowa.

4. The Corporation, Kizer and Sievers hereby agree that 50 shares of stock of the Corporation shall issue to Sievers and that Sievers shall execute a personal guarantee in favor of the Corporation and Kizer personally guaranteeing the payment of $60,000.00 of corporate debt to Central Bank in Storm Lake, Iowa.

5. Sievers acknowledges and agrees that monthly payments of principal and interest on the loan described above are made by automatic withdrawal from the Corporation's checking account and that this practice shall continue. These debt payments shall have priority over any distributions to Sievers.

6. Sievers acknowledges and agrees that the shares of stock issued to her by the corporation shall be held by said Corporation as security for her personal guarantee to pay $60,000.00 of the corporate debt and that if she fails to honor or abide by said personal guarantee said shares shall remain in the possession of the Corporation and shall be subject to forfeiture, in which case Sievers shall have no proprietary interest in the Corporation.

The agreement was signed on April 8, 2008, by Kizer "individually as president of

Serenity Salon & Spa, Inc." and Sievers.

Sievers that same date signed the following document, entitled "personal

guaranty":

I, Kim Sievers, . . . for and in consideration of the agreement by Serenity Salon & Spa, Inc. and Susan Kizer to issue 50 shares of stock in said Corporation to me do hereby unconditionally guarantee payment of $60,000.00 to Central Bank of Storm Lake, Iowa, whether evidenced by an open account, note or other evidence of debt; however, this guaranty is related to a promissory note executed by the Corporation above named in favor of Central Bank as Loan Number 4802901 dated April 1, 2008 with a maturity

date of April 1, 2018, in the total amount of $130,000.00. This guaranty shall continue in force until such time as the above described note is paid in full. The undersigned acknowledges, understands and agrees that in the event the Corporation above named is unable to pay the promissory note identified above, she shall be personally liable to repay said debt to Central Bank up to the amount of $60,000.00, plus interest, accrued late charges and any other fees and costs that are assessed by the bank. The undersigned further acknowledges, understands and agrees that the terms of certain documents entitled Guaranty executed by Susan Kizer and Mrylon Kizer in regard to Loan No. 4802901 shall be incorporated herein by reference and that the undersigned obligation to repay the debt at Central Bank shall be governed by said terms as well as the terms of this Guaranty.

I agree that this is absolute and unconditional Guaranty. This Guaranty cannot be revoked and will remain in effect until the debt at Central Bank, identified above, is paid in full. If I fail to abide by the terms of this Guaranty, Serenity Salon & Spa, Inc. and Susan Kizer shall have a cause of action against me for actual damages suffered as a result of my failure.

Sievers enrolled in cosmetology school in July 2008. She graduated on July 9, 2009, and began working at Serenity on July 10, 2009. Karla left Serenity in August 2009, taking her clients to her new place of part-time employment.

In July 2010, Kizer left Serenity and opened a salon a few blocks away, taking her clients with her. Sievers continued to operate Serenity.

On July 22, 2011, Serenity was sent a notice by Central Bank that Note 4802901 was two payments past due and, because the loan was delinquent, the bank was demanding payment in full of the principal and accrued interest in the amount of $57,741.87.

On July 26, 2011, Sievers was sent a letter asserting she was in default under the terms of the stock purchase agreement and demanding she vacate the Serenity premises. She declined.

On December 15, 2011, Serenity and Kizer filed a petition asserting four causes of action: (1) breach of the stock purchase agreement in that Sievers "has failed to make payment of the corporate debt to Central bank of Storm Lake, Iowa," (2) trespass and unreasonable invasion of use and enjoyment of property in failing to vacate the Serenity premises "despite having no valid proprietary interest," (3) a request for a declaration of rights and status under the stock purchase agreement in which the plaintiffs asked the court to "determine all questions of construction relating to the issues described herein and declare the rights of the parties affected by reason thereof," and (4) Sievers was a director and officer of Serenity and had "negligently, carelessly, and intentionally failed to perform her duties to that [sic] funds and assets of Serenity were mismanaged, wasted, and diverted." Further, the plaintiffs alleged Sievers "through intimidation and acts of insubordination" caused "Kizer to remove herself from the location of the business" of Serenity, and further that she was "using invalid powers . . . and using such power illegally and oppressively."

Sievers filed an answer, denying the allegations of the petition and asserting several affirmative defenses, as well as a counterclaim for breach of an oral agreement. Sievers alleged Kizer misrepresented the financial status of the corporation, breached an oral agreement to teach Sievers the business and remain for three to five years, and misused company assets "to her advantage and detriment of the business."

The matter was tried to the court on October 15, 2013. On February 25, 2014, the court entered its ruling on the petition and counterclaim. The court made these findings of fact:

With this purchase agreement, [Kizer] consolidated the Serenity debt with Central Bank in the amount of $130,000. [Kizer] and [Sievers] entered into a stock purchase agreement on April 8, 2008, and [Sievers] signed a personal guaranty to guarantee $60,000 to Central Bank as identified in Exhibit 2. [Sievers] did not have the stock purchase agreement or personal guaranty reviewed by her own legal counsel. Ted Brown prepared the documentation and had previously represented [Kizer] in other legal matters. [Sievers] did not make any initial direct payment for the stock purchase agreement, but assumed $60,000.00 of the debt to Central Bank.

[Kizer] did not disclose to [Sievers] that Serenity operated at a loss each year. In 2007, Serenity lost approximately $30,000. A review of the tax returns throughout the operation of this business demonstrated a loss each year. However, [Kizer] would assert this loss is somewhat a loss "on the books" as [Kizer] and [Sievers] would receive income for services directly provided to clients. The court was not presented with [Kizer]'s personal income while working at Serenity, and [Sievers] earned meager income as set forth in Exhibit H.

Any existing good faith to join forces to operate Serenity quickly disappeared. [Kizer]'s daughter left Serenity in 2009 taking with her 42% of the clients. [Kizer] thereafter left Serenity in June of 2010. [Kizer] blames [Sievers]'s relationship with the other cosmetologists, and she believes this created a hostile work environment requiring her to open her own salon. [Kizer]'s departure resulted in a 72% loss of the remaining clients of Serenity.

[Sievers] continues to operate the business at its current location and currently has 7 employees. [Sievers] recently renewed the lease with the landlord at that location. The parties did not agree on how to financially deal with the separation and basically operated independently of each other until [Sievers] stopped making payments on the note with Central Bank in March of 2011. At that time both parties positioned themselves with communication through counsel of record, and this petition was filed by [Kizer] in December of 2011.

[Kizer] continued to work with Central Bank and has paid off the note leaving a personal loan in the amount of $40,848.82 as identified in Exhibit 3. Testimony appears that perhaps [Kizer] and or her husband have now paid that remaining loan in its entirety. [Sievers] continued to pay the day to day bills operating Serenity. [Sievers] injected a significant amount of money into Serenity to keep the doors open.

. . . .

. . . Exhibit G demonstrates that when [Sievers] and [Kizer] began jointly operating, [Sievers] paid $13,375.39 towards the loan

with Central Bank. [Sievers] would assert that after [Kizer] left the corporation, [Sievers] continued to make payments to Central Bank in the amount of $11,373.30. [Kizer] also continued to make monthly payments totaling $75,982.59 since 2008. Exhibit 7 identifies the bank registry identifying payments. Of note is that M[ry]lin Kizer paid $55,269 against the principle of this note on December 21, 2010.

     The Court makes a creditability finding based upon the record. [Kizer] did not disclose the true financial condition of Serenity to [Sievers], although [Sievers] did not do proper due diligence to "purchase" one-half of Serenity. [Kizer] repeated in her testimony her attitude toward Serenity of "throwing money down a rat hole!" The record is clear that [Kizer] arranged this agreement with [Sievers] to get out of a losing business. [Kizer]'s testimony lacks creditability that she had to leave Serenity. Almost immediately after the sale to [Sievers], [Kizer] attempted to sell her remaining one-half of Serenity. She did not disclose this to [Sievers] and falsified discussions with other salon owners in Storm Lake. She attempted to sell to other Serenity employees. [Kizer] began a new salon while still working for Serenity and had product for her new salon delivered to the Serenity location.

     [Kizer] and her daughter left Serenity within 2 years of the agreement with [Sievers] taking with them the great majority of the Serenity clients. [Kizer] did not take steps to dissolve Serenity, but instead directly competed against Serenity. [Kizer] was and still remains an officer, director and half-owner of Serenity. [Sievers] continued to operate the business and pay the lease. The remaining assets of Serenity include inventory of $15,752 and depreciated assets of $10,167 as evidenced by the 2012 Serenity tax return.

     [Sievers] appears creditable and somewhat naive in this entire business process.

The court summarized the claims before it:

     The court is asked to make a determination of the competing claims by each party in this breakup of Serenity. [Kizer] asserts a contractual obligation based upon the stock transfer and personal guaranty of $60,000. [Kizer] has the burden of proof to prove this claim that [Sievers] has failed to perform by failing to make payments on the Serenity debt to Central Bank. [Kizer]'s second claim is a request to obtain the assets of the corporation, and the third cause of action being a declaration of the rights of the assets of Serenity. [Sievers] counters a breach of contract by [Kizer,] alleging she failed to perform under the terms of the purchase agreement. [Sievers] has the burden of proof as to the counterclaim.

The court concluded Kizer had proved "the basic elements of reimbursement" and "pursuant strictly to the contractual documentation" Sievers "would be responsible for $60,000 reimbursement to [Kizer]." However, the court continued,

> [Sievers] has the burden of proof to establish by a preponderance of the evidence that [Kizer] breached the purchase agreement justifying her failure to pay the bank loan and relieve her of the personal guaranty. [Sievers] asserts the defense of failure of consideration. Failure of consideration means a contract is valid when formed, but becomes unenforceable because performance bargained for has not been rendered. . . . To constitute a complete defense to breach of contract claim, alleged failure of consideration must be total; total failure of consideration occurs when a party has failed or refused to perform substantial part of what the party agreed to. In those circumstances, the failure or refusal to perform defeats the very purpose of the contract. . . .
>
> The court further reviews these parties' actions in this case based upon the corporate issue of each party's duty of loyalty and good faith to the corporation. The court initially recognizes that directors and officers of the corporation have a fiduciary duty to act in all things wholly for the benefit of the corporation. This duty limits a director's or officer's conduct both as to actions taken on behalf of the corporation and actions taken in the fiduciary's own behalf that may have an effect on the corporation. . . .
>
> The court concludes that [Kizer] has breached the purchase agreement with [Sievers]. [Kizer]'s actions after the stock purchase demonstrated that she had no intention to follow through with her purchase agreement with [Sievers]. She promised that her daughter and she would continue to work at Serenity. As soon as [Sievers] became a licensed cosmetologist, her daughter left and [Kizer] was making preparations to leave, including attempting to sell to other third parties. She did not disclose these attempts to sell to [Sievers]. Thereafter, she began preparation of opening her own salon and left and actually had product for her new salon delivered to the Serenity location. [Kizer] has continued to operate as an officer and director of the corporation. The court did not receive any proof of a resignation by [Kizer] from the Serenity Corporation. [Kizer] continued to make monthly payments towards the outstanding obligation; however, [Kizer] did not work at the Serenity location. To the contrary, she directly competed against Serenity and [Sievers]. She removed a vast majority of the clientele who she serviced at her new salon.

Therefore, the court concludes that under both causes, [Sievers] has established by a preponderance of evidence that [Kizer] breached the purchase agreement with [Sievers] and breached her duty of loyalty to Serenity. She did not continue to work at Serenity and assist [Sievers] with learning the salon business. She did not resign as a director or officer and directly competed against Serenity.

The district court dissolved the corporation and ordered judgment against Sievers for the value of Serenity's inventory and equipment less the amount Kizer had charged on the corporate credit card, which had been paid by Serenity.

Kizer appeals, contending, first, the issue of dissolution of the corporation was not raised by the pleadings or tried by consent, and that Sievers had not proved Serenity should be dissolved. Kizer also contends Sievers failed to plead a breach of fiduciary duty by Kizer. She argues Sievers breached the stock purchase agreement, there was lack of sufficient evidence of the existence of an oral contract, and the trial court's findings of fact are not supported by substantial evidence. With the exception of dissolving the corporation, we agree with the district court's general disposition of the case, though for different reasons.

**III. Discussion.**

*A. Asserted failure to plead.*

Kizer complains the trial court erred in dissolving Serenity because Sievers failed to plead grounds for or request that Serenity be dissolved, or that Kizer breached a fiduciary duty. Iowa courts are committed to notice pleading. *See Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 762 N.W.2d 463, 474

(Iowa 2009).[4]  However, the remedy entered here was not sought by any party, and we agree that under the facts found by the trial court, dissolving the corporation was unnecessary, which we will address later.[5]

### B. Failure of consideration.

The trial court concluded that Sievers breached the stock purchase agreement, which entitled Kizer to contribution.  Sievers, however, had asserted

---

[4] "We continue to rely upon notice pleading in Iowa.  As such, it is not necessary to raise a specific theory of liability, but only to state the basis in broad, general terms.  Iowa R. Civ. P. 1.402(2)(a)."  *Wells Dairy*, 762 N.W.2d at 474.

[5] The Iowa Business Corporation Act, Iowa code chapter 490 (2013), authorizes the district court to dissolve a corporation in a "proceeding by a shareholder" if "any of the following conditions exist":

> (1) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and either irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.
> (2) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent.
> (3) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired.
> (4) The corporate assets are being misapplied or wasted.

Iowa Code § 490.1430(b).

Kizer's petition alleged Sievers was a director and officer of Serenity who "negligently, carelessly, and intentionally failed to perform her duties to that funds and assets of Serenity were mismanaged, wasted, and diverted."  The petition asked that the court "determine all questions of construction relating to the issues described herein and declare the rights of the parties affected by reason thereof."  On appeal, Kizer states, "The day to day operation of the business had been made impossible."

Sievers, in turn, alleged Kizer "changed the sharing of the business income at her sole election," "had use of a corporate credit card which she used for payment of her own personal bills and expenses," "was in the process of purchasing materials in anticipation of opening a new salon on her own, and intended to go into competition with Kim Sievers and Serenity Salon & Spa, Inc.," did "start[] a new salon," and on June 10, 2010, "start[ed] a new salon," "used Serenity's computer to access clients' addresses and sent out notice of her intended move," "took 72% of the client[ele] of Serenity," and acted in direct competition with Serenity, as a result of which the corporate entity suffered.

The court heard the testimony of purportedly equal shareholders who were at odds and conducting business in direct competition with one another.  These allegations would allow the court to dissolve the corporation.  However, at trial, Sievers testified, "I would like to continue being the sole manager and owner and continue what I've accomplished over the last three years."

she was relieved of her obligations under the stock purchase agreement and personal guaranty due to a failure of consideration. The district court ruled this contention "lacks any weight to a determination in this controversy." In so ruling, the court erred as a matter of law.

A failure of consideration means a contact is valid when formed but becomes unenforceable because the performance bargained for has not been rendered. *Johnson v. Dodgen,* 451 N.W.2d 168, 172 (Iowa 1990).

> To constitute a complete defense to a breach of contract claim, the alleged failure of consideration must be total. A total failure of consideration occurs when a party has failed or refused to perform a substantial part of what the party agreed to do. In these circumstances the failure or refusal to perform defeats the very purpose of the contract.

*Id.*

Here, the consideration for Sievers's promise under the personal guaranty was "the agreement by Serenity Salon & Spa, Inc. and Susan Kizer to issue 50 shares of stock in said Corporation." No stock was ever issued.[6] *Cf. id.* at 174-75 (acknowledging that "[e]ven though a seller retains physical possession of the stock as collateral under a stock purchase agreement, there may be constructive delivery of the stock from the seller to the buyer" and finding constructive delivery where stock was reissued in the buyer's name but held as security). Kizer herself testified no shares of stock were ever issued to anyone.[7] Sievers

---

[6] Apparently, stock certificates were prepared by an attorney, but they were not dated, signed, or delivered, constructively or otherwise. Further there was no allegation that shares without certificates were authorized by the corporation. *See* Iowa Code §§ 490.625–.626. There were also no incidents of ownership such as where properly issued stock was simply held as collateral. *See Johnson*, 451 N.W.2d at 174; *see also* Iowa Code § 490.625 (providing each stock certificate must be signed by two officers or the board of directors).

[7] Kizer testified:

nonetheless continued to operate the business of Serenity and contributed more than $60,000 of her own funds to the business while Kizer and the corporation seemingly abandoned the business.[8] Because there was a complete failure of consideration constituting a breach of the agreement, Sievers was discharged from performance under the personal guaranty. *Johnson*, 451 N.W.2d at 172 (stating a failure of consideration discharges performance). Thus, like the district court, though for a different reason, we conclude Sievers is relieved of performance under the personal guaranty.

*C. Request that the court declare the rights of the parties.*

The district court addressed the request that it "declare the rights of the parties affected" as follows:

> The court must then declare the rights of [Kizer] and [Sievers] in Serenity based upon the above conclusions. The court concludes that Serenity should be dissolved and the assets of Serenity be transferred to [Sievers]. [Sievers] is relieved of the guaranty of $60,000 based upon [Kizer]'s breach of the agreement. The Court does not make this conclusion based upon any covenant not to compete. [Kizer] was free to resign from Serenity and/or dissolve the corporation when she decided to open a new salon. [Kizer], however, did not do so. This caused the continuing financial drain upon both parties. [Kizer] did continue to pay the outstanding loan to Central Bank. However, [Kizer] fails to recognize that [Sievers] continued to operate the business; paying

---

Q. Okay. So let me ask you this: How could you give my client 50 shares of stock if, in fact, you didn't have 50 shares of stock? Just can you answer that for me? A. No.

Q. Okay. Did anyone else you say hold any shares of stock in this corporation? Obviously, there were none issued, so nobody could hold any shares; right? A. No.

. . . .

Q. Do you agree with me that it was—what you stated in Plaintiffs' Exhibit 1 [the stock purchase agreement] was not accurate because there were no shares of stock issued; right? A. I guess.

[8] We reach this conclusion because neither Kizer nor the corporation contributed any funds to keep the business afloat after Kizer left the business and siphoned customers from the business.

the lease and injecting over $60,495.27 since [Kizer] leaving Serenity.

[Sievers], however, would be unjustly enriched if the court stopped at that juncture in this dispute between the parties. [Sievers] would receive equipment and inventory of Serenity without payment since she is being relieved of the personal guarantee. The court concludes that based upon the 2012 tax return, inventory and equipment is valued at $25,919.00. Further, this would be subtracted by the personal purchases that Serenity paid for [Kizer] in the amount of $7027.65. Judgment, therefore, will be entered against [Sievers] in the amount of $18,881.35.

While we agree with much of the trial court's settlement of the issues, we disagree that Serenity should be dissolved. Sievers requested that she be allowed to continue to operate the business as she had done for the past several years. It continues to employ other workers. Sievers renewed the lease under her name for a five-year term on April 2, 2013. Under the circumstances presented here, because no corporate stock ever issued, we treat the relationship between Serenity, Kizer, and Sievers as one of joint venture.[9] *See Farm-Fuel Prods. Corp. v. Grain Processing Corp.*, 429 N.W.2d 153, 158 (Iowa 2012) ("[A] joint venture may arise by implication."). As a party in a joint venture, Kizer had a duty of good faith. *See Larken, Inc. v. Larken Iowa City Ltd. P'ship*,

---

[9] In *Peoples Trust & Savings Bank v. Security Savings Bank*, 815 N.W.2d 744, 756 (Iowa 2012), the court stated:

> We have held that "no particular form of expression or formality of execution" is necessary to establish a joint venture, which may be implied "in whole or in part from the conduct of the parties." *Pay-N-Taket* [*, Inc. v. Crooks,* 145 N.W.2d 621, 625 (Iowa 1966)].
>     We have characterized a joint venture in a number of ways. In *Brewer* [*v. Central Construction, Co.* 43 N.W.2d 131, 136 (Iowa 1950)]*,* we said:
>
>> A joint adventure is defined as an association of two or more persons to carry out a single business enterprise for profit; also as a common undertaking in which two or more combine their property, money, efforts, skill or knowledge.
>
> . . . [A] gateway requirement of a joint venture is a showing that the participants have agreed to share in the profits and losses.

589 N.W.2d 700, 704 (Iowa 1999) ("'[T]he duty of good faith is not limited to the familiar categories such as partnership, joint venture, and agency; it permeates the law wherever a relationship of trust and confidence exists.'" (citation omitted)).

The trial court found Kizer breached her fiduciary duty to Serenity. While the trial court based its decision on its "recogni[tion] that directors and officers of the corporation have a fiduciary duty to act in all things wholly for the benefit of the corporation," *see Midwest Janitorial Supply Corp. v. Greenwood*, 629 N.W.2d 373, 375 (Iowa 2001),[10] the following findings are equally applicable to Kizer's duty as a joint venturer. Kizer had a fiduciary duty to Serenity and Sievers. *See Kurtz v. Trepp*, 375 N.W.2d 280, 283 (Iowa Ct. App. 1985) ("A fiduciary relationship exists between directors of a corporation. A fiduciary relationship also exists between joint venturers, such as partners." (citation omitted)); *see also Greenberg v. Alter Co.*, 255 Iowa 899, 902, 124 N.W.2d 438, 440 (1963) ("There is no question but joint venturers like partners owe the duty of finest loyalty and such loyalty continues throughout the life of the venture and its dissolution."). The trial court as fact finder determined Kizer "began a new salon while still working for [the business] and had product for her new salon delivered to the [the business] location." It also found Kizer left [the business] earlier than promised, taking with her the "the great majority of the [the business] clients; Kizer remained an officer, director, and half-owner of Serenity while directly competing against [the business]; and Kizer used a corporate credit card for her

---

[10] "[D]irectors and officers of a corporation have a fiduciary duty to act in all things whole for the benefit of the corporation." *Midwest Janitorial*, 629 N.W.2d at 375.

own benefit. The trial court concluded Kizer breached the purchase agreement and her duty of loyalty to Serenity. For the same reasons, we conclude there is substantial evidence that Kizer breached her fiduciary duty of loyalty to both Serenity and to Sievers.

*D. Settlement of rights.*

The parties asked the district court to determine their rights and status. They had no agreement to resolve those rights in the event their plans were unsuccessful. Kizer and Sievers believe they are each owed a significant sum from the other. The judgment may be entered as an accounting upon the termination of a joint venture. *See Jensen v. Schreck*, 275 N.W.2d 374, 388 (Iowa 1979).

Kizer requested the trial court to award her the assets of the corporation. Because we find it unnecessary to dissolve the corporation, the corporate entity shall be awarded to Kizer. However, like the district court, we conclude permitting Sievers to maintain the ongoing business and equipment is reasonable and equitable under these facts. Sievers received no stock, kept the salon business going, invested substantial funds into the business, and paid down the corporate debt. During this time, Kizer took actions reflecting an intent to abandon both the agreement between the parties as well as the business, but for the desire that Sievers continue making payments on the corporate debt and other business monthly obligations.[11] The corporation stood idly by without

---

[11] It appears that without Sievers's active participation, the very existence of the business would be questionable. We note that Kizer's trial brief acknowledges Sievers had complete control of the business from June 2010 through December 2012. The

providing any influx of moneys to aid the business, notwithstanding Sievers's major contributions and payments toward corporate debt and obligations.

Although the district court awarded the business assets to Sievers, it concluded Sievers would be unjustly enriched without some offsetting payment for the inventory and equipment valued by the district court in the sum of $25,919. After reducing the value of those assets by the credit card debt for personal purchases made by Kizer in sum of $7027.65, the court imposed judgment against Sievers and in favor of Kizer in the generous amount of $18,881.35. On appeal, Sievers has asked that we affirm the judgment entry.

Unfortunately, the judgment should have been entered in favor of the corporation, as the corporation, not Kizer, owned the assets and inventory of the business. Because the judgment should have been in favor of the corporation, Sievers is not entitled to an offset for the credit card debt incurred by Kizer but paid by the business. However, we believe Sievers is entitled to an offset or credit at least equal to the same amount because of her contributions to the business and for one-half of all payments made toward the corporate debt from the beginning of the joint venture as she received no stock. Accordingly, we remand with directions to the district court to correct the judgment entry showing the judgment is in favor of the corporation, not Kizer.

Upon our de novo review and in light of Kizer's and the corporation's actions and inactions, Sievers's cash inputs to Serenity, and Sievers's payments toward the corporate indebtedness, we find no reason to disturb the trial court's

---

evidence also suggests that other employees of the business sided with Sievers in the parties' dispute.

resolution of the rights as between Kizer, Sievers, and the corporation, except the corporation shall not be dissolved and the judgment entry corrected. Kizer shall retain whatever rights she has to the corporate entity. We further declare that Sievers shall have no rights to the corporate entity or corporate name but shall retain the business and its assets and inventory. All other terms of the district court order not inconsistent with these terms are affirmed.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**