**CHESAPEAKE FORD, INC., Appellant,**

v.

**OHIO MOTOR VEHICLE DEALERS BOARD et al., Appellees.***

[Cite as *Chesapeake Ford, Inc. v. Ohio Motor Vehicle Dealers Bd.* (1995), 103 Ohio App.3d 515.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE10–1651.

Decided May 16, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1422, 655 N.E.2d 741.

516

*Shayne & Greenwald, Gary D. Greenwald* and *Rodd S. Lawrence,* for appellant.

*Betty D. Montgomery,* Attorney General, *David B. Clouston* and *Rebecca A. Spainhoward,* Assistant Attorneys General, for appellee Ohio Motor Vehicle Dealers Board.

*Baker & Hostetler, George W. Hairston, Elizabeth A. McNellie* and *Jerri H. Stewart,* for intervenor-appellee Ford Motor Company.

TYACK, Judge.

On December 19, 1990, Ford Motor Company ("Ford") notified Chesapeake Ford, Inc. ("Chesapeake") that Ford intended to terminate its Ford Dealer Sales and Service Agreement with Chesapeake. On March 12, 1991, Chesapeake filed

a protest with the Ohio Motor Vehicle Dealers Board ("the board") pursuant to R.C. 4517.54(C). Almost two and one-half years later, an evidentiary hearing was conducted before a hearing examiner. In January 1994, the hearing examiner filed a "recommendation" that Ford be permitted to terminate its relationship with Chesapeake. Pursuant to R.C. 4517.58, the "recommendation" was deemed to have been adopted by the board because the board took no action.

Pursuant to R.C. 119.12, Chesapeake appealed to the Court of Common Pleas, Franklin County, Ohio. A judge of that court affirmed the board's decision. Chesapeake has now pursued a further appeal, assigning eight errors for our consideration:

"I. The court of common pleas erred as a matter of law in its decision by failing to apply the proper burden of persuasion to the consideration of whether the owners of Chesapeake Ford, Inc. had actual knowledge of the facts and circumstances upon which termination of their franchise is based, which consideration is required by R.C. § 4517.55(A)(8).

"II. The court of common pleas erred as a matter of law in its decision by ruling that a determination of good cause pursuant to R.C. § 4517.55(A) requires a consideration of no more than one of the nine circumstances set forth therein.

"III. The court of common pleas erred as a matter of law in its decision by failing to give any consideration to whether the proposed termination of the franchise of Chesapeake Ford, Inc. constitutes discriminatory enforcement of the franchise agreement, which consideration is required by R.C. § 4517.55(A)(9).

"IV. The court of common pleas erred as matter of law in its decision by failing to give proper consideration to the amount of retail sales transacted by Chesapeake Ford, Inc. during a five year period immediately preceding the notice of termination as compared to the business available to Chesapeake Ford, Inc., which consideration is required by R.C. § 4517.55(A)(1).

"V. The court of common pleas erred as a matter of law in its decision by failing to apply the proper burden of persuasion to the consideration of the investment made and obligations incurred by Chesapeake, which consideration is required by R.C. § 4517.55(A)(2).

"VI. The court of common pleas erred as a matter of law in its decision by failing to give any consideration to the permanency of Chesapeake Ford, Inc.'s investment, which consideration is required by R.C. § 4517.55(A)(3).

"VII. The court of common pleas erred as matter of law in its decision by failing to give any consideration to whether Chesapeake Ford, Inc. has adequate facilities, which consideration is required by R.C. § 4517.55(A)(5).

"VIII. The court of common pleas erred as a matter of law in its decision by failing to decide that Ford Motor Company did not provide to Chesapeake Ford, Inc. a warning prior to termination as required by R.C. § 4517.54(B)."

In considering this appeal, we are bound to determine whether the board and the lower court correctly applied R.C. 4517.54(A) and (B), which read:

"(A) Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate or fail to continue or renew a franchise except for good cause. This section governs any action or intent to terminate, discontinue, or not renew a franchise whether the franchise was entered into prior to or after the effective date of this amendment.

"(B) Each franchisor proposing to terminate, discontinue, or not renew a franchise shall send written notice by certified mail of the proposed action to the franchisee at such time as may be necessary to ensure that the notice is received no later than ninety days before the effective date of the proposed action or no later than fifteen days before the effective date of the proposed action when the proposed action is based upon any of the following:

"(1) Insolvency of the franchisee, or filing of any petition by or against the franchisee under any bankruptcy or receivership law;

"(2) Any unlawful business practice after written warning thereof;

"(3) The franchisee has ceased business operations. Each notice shall set forth the specific grounds for the proposed termination or refusal to continue or renew."

The board and the lower court also were guided by R.C. 4517.55(A), which reads:

"(A) In determining whether good cause has been established by the franchisor for terminating or failing to continue or renew a franchise, the motor vehicle dealers board shall take into consideration the existing circumstances, including, but not limited to:

"(1) The amount of retail sales transacted by the franchisee during a five-year period immediately preceding such notice as compared to the business available to the franchisee;

"(2) The investment necessarily made and obligations incurred by the franchisee to perform its part of the franchise;

"(3) The permanency of the franchisee's investment;

"(4) Whether it is injurious or beneficial to the public interest for the franchise to be modified or replaced, or the business of the franchisee disrupted;

"(5) Whether the franchisee has adequate motor vehicle sales and service facilities, equipment, vehicle parts, and qualified service personnel to reasonably provide for the needs of the consumers for the motor vehicles handled by the franchisee, and is rendering adequate service to the public;

"(6) Whether the franchisee fails to fulfill the warranty obligations of the franchisor required to be performed by the franchisee;

"(7) The extent and materiality of the franchisee's failure to comply with the terms of the franchise and the reasonableness and fairness of the franchise terms;

"(8) Whether the owners of the new motor vehicle dealer had actual knowledge of the facts and circumstances upon which termination is based;

"(9) Whether the proposed termination constitutes discriminatory enforcement of the franchise agreement."

█ In its first assignment of error, Chesapeake alleges that the trial court applied an improper burden of persuasion in regard to R.C. 4517.55(A)(8).

Ford purportedly is attempting to terminate its relationship with Chesapeake because of pervasive fraud perpetrated by Chesapeake in regard to warranty service work. After several discussions and various correspondence with Chesapeake about problems with the charges assessed to Ford for warranty service work, Ford conducted an audit which revealed extensive billing for services not performed and for parts not utilized. One hundred seven of the invoices of over five hundred involved were signed personally by one of the two shareholders of Chesapeake. In affirming the board's finding that the owners of the dealership had actual knowledge of the fraud, the trial judge noted:

" * * * It is undisputed that Chesapeake violated the franchise agreement by submitting 511 false, fraudulent, and other irregular claims as required by R.C. 4517.55(A)(8). Messrs[.] Holschuh and Hayes personally signed 107 of the 511 invalid warranty claims. The appellants argue that they signed the claims in reliance on the representation of an employee. This argument does not relieve the owners of their responsibility to read and verify the claims before affixing their signature. The evidence further shows that Messrs[.] Holschuh and Hayes were repeatedly warned against failing to observe the procedures in the Warranty and Policy Manual, and were notified of their personal warranty problems on a number of occasions. It is improbable that the owners had no actual knowledge of the fraudulent warranty claims. * * * "

█ The trial court then proceeded to find that reliable, substantial and probative evidence supported the board's finding. In reviewing the trial court's decision, our review is limited to a determination of whether there was an abuse

of discretion below. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750. "An abuse of discretion involves more than an error of law or of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable or arbitrary." *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30, citing *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 22 OBR 275, 489 N.E.2d 288. We find no abuse of discretion or error of law in the trial court's finding regarding knowledge of the owners. Removing the double negative, the trial court found it probable that the owners knew of the fraudulent warranty claims. The inferences from the evidence before the board clearly support the trial court's finding, placing the finding in the zone of allowable discretion.

The first assignment of error is overruled.

The second assignment of error essentially contends that the trial court erred in failing to find that each of the nine enumerated circumstances set forth in R.C. 4517.55(A) must be expressly considered in making the "good cause" determination. Chesapeake points to no authority, and our research finds none, for its proposition, aside from its construction of the "plain language" of and "obvious" legislative intent underlying the statute. We do not agree with the assertion that R.C. 4517.55(A) necessitates a delineation of the express consideration of each of the nine enumerated factors.

The trial court's decision on the administrative appeal affirms that the board's action was consistent with all of R.C. 4517.55(A). The fact that Chesapeake increased sales over the sales of its predecessor was a positive factor for Chesapeake. Other factors contained in R.C. 4517.55 have greater or lesser capability of being viewed as positive considerations for Chesapeake. However, pervasive fraud in the service department can, in and of itself, constitute a sufficient basis for a determination that good cause to terminate the franchise exists. Here, both the franchisee and its shareholders were on notice that the service department was billing for services not performed, for tows not provided, and for parts not ordered. Ford did not have to remain in a business relationship with an entity which purely and simply had stolen from it and had made little effort to rectify the underlying problem.

The second assignment of error is overruled.

The third assignment of error suggests that the trial court failed to consider Chesapeake's argument that it was the victim of discrimination. Apparently, the theory is that all Ford dealerships attempt to defraud Ford in regard to warranty work, so Ford discriminated against Chesapeake by trying to terminate its franchise. Although other Ford dealerships may submit erroneous warranty billings, the extent of the problem at Chesapeake makes untenable an

argument which asserts discrimination. In a very small service department, the few technicians who worked there and their supervisor were generating improper warranty billings seven times in a five-day period. The situation has been described as one of the two worst discovered by audits of warranty work. The record does not support a finding that Chesapeake is in a position to argue discrimination.

The third assignment of error is overruled.

■ The fourth assignment of error asserts that the trial court did not properly consider the retail sales figures for Chesapeake when the trial court affirmed the board's decision. To a great degree, this assignment of error has already been addressed. Good retail sales do not have to be considered as balancing or outweighing extensive fraud. Neither the board nor the trial court erred in failing to find good cause to terminate the franchise because retail sales had improved.

The fourth assignment of error is overruled.

■ The fifth assignment of error suggests that the lower court did not give proper consideration to the investment by Chesapeake. We note initially that R.C. 4517.55(A)(2) requires consideration of the investment of the franchisee, not the owners of the corporate franchisee. To the extent that funds were expended or indebtedness was incurred by the shareholders in their personal capacities, R.C. 4517.55(A)(2) does not mandate consideration.

As with the other subsections contained under R.C. 4517.55(A), R.C. 4517.55(A)(2) mandates that the determination of just cause be made with a view to the impact on the franchisee. The fact that the value of the investment may be damaged by the loss of the franchise arrangement with Ford is unfortunate for the shareholders. Where, as here, the shareholders were not really innocent owners, the loss is a loss which was foreseeable and is a loss which the shareholders risked by the conduct they at least permitted.

The trial court and the board correctly weighed this consideration. The fifth assignment of error is overruled.

■ Similar observations apply to the sixth assignment of error. Certainly, investment in a sixty-year-old building and adjacent land involves at least some permanency issues. However, conceivably the commercial value of the real estate is not totally lost. Even if the risk of financial losses is involved, the risk does not force a continued business relationship between Ford and Chesapeake because of the pervasive fraud demonstrated by the record.

The sixth assignment of error is overruled.

■ The seventh assignment of error suggests that the trial court did not correctly weigh R.C. 4517.55(A)(5), which addresses the adequacy of facilities and

personnel. As best we can tell, the facilities are fundamentally the same facilities in existence when Ford accepted Chesapeake as a franchisee. Between those parties, the facilities issue really is not a benefit to either. However, the statute can look beyond the agreement of the parties and Ford's acceptance of a substandard facility. The statute can consider the interests of the consuming public, which would be better served by an improved facility. Under the facts of this case, R.C. 4517.55(A)(5) does not benefit the franchise.

The seventh assignment of error is overruled.

 The eighth and final assignment of error directs our attention to R.C. 4517.54(B). The record before us indicates compliance with R.C. 4517.54(B), which primarily addresses the notice necessary before termination. R.C. 4517.54(B)(2) mentions a second form of notice, namely, written warning of an unlawful business practice. The record shows repeated warnings, although most of the warnings were standardized notices addressed to several dealerships. These standardized notices in and of themselves would satisfy this statute. However, more detailed notices and individual warnings were also provided.

The eighth assignment of error is overruled.

All assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and DESHLER, J., concur.