**LARKEN, INC., Appellee,**

v.

**LARKEN IOWA CITY LIMITED PARTNERSHIP and Pine Hill Iowa, Inc., Appellants.**

No. 96–2189.

Supreme Court of Iowa.

Dec. 23, 1998.

Rehearing Denied Jan. 29, 1999.

Edwin N. McIntosh of Dorsey & Whitney LLP, Des Moines, and Howard O. Boltz, Jr. of Bryan Cave LLP, Los Angeles, California, for appellants.

Hugh G. Albrecht of Tom Riley Law Firm, P.C., Cedar Rapids, and Mark C. Dangerfield and L. Richard Williams of Grant, Williams, Lake & Dangerfield, Phoenix, Arizona, for appellee.

LARSON, Justice.

The owner of an Iowa City hotel has appealed from a district court judgment denying the owner's attempted termination of a management agreement allegedly breached by the manager's self-dealing. The district court held that the owner's sole remedy was termination following the thirty-day notice and right to cure provided by the management agreement, and the owner had no right to terminate the contract without notice. We reverse and remand.

### I. *The Facts.*

The defendants, Larken Iowa City Limited Partnership and Pine Hill Iowa, Inc. (Pine Hill), and the plaintiff, Larken, Inc. (Larken), owned a Hilton Inn in Bloomington, Minnesota, and a Holiday Inn in Iowa City, Iowa. The present action involves only the management of the Iowa City hotel. In addition to its ownership interest, Larken managed both

hotels under similar long-term management agreements. Pine Hill eventually bought out Larken's interest in the partnerships to become the sole owner of the hotels, but Larken retained its manager status. Larken and Pine Hill also reached a $700,000 settlement for accounting errors and defaults by Larken under the contract. That litigation, in federal court, did not address the issue in the present case: whether Pine Hill may terminate the management contract without notice and an opportunity to cure.

As manager, Larken is responsible for purchasing equipment for the hotel, maintaining the hotel to comply with Holiday Inn franchising requirements, accounting for receipts and expenditures, and supervising the employees who handle the day-to-day operations of the hotel. Larry and Ken Cahill own Larken, Inc. and manage several hotels in addition to the Hilton Inn and the Holiday Inn. Larry Cahill is the president of Larken, and he also owns an interest in Long Distance Data Partnership (LDDP) telephone service, a relationship that ultimately gave rise to Pine Hill's claim of self-dealing, as discussed later.

On October 31, 1995, Pine Hill sent a letter notifying Larken that Pine Hill intended to terminate the management agreement for several alleged defaults. Pine Hill did not offer an opportunity to cure the defaults. Larken responded by filing declaratory judgment actions in Minnesota and Iowa to obtain rulings that Larken had not violated the agreements and that Pine Hill had not provided Larken with a notice and an opportunity to cure as required by the agreements. Pine Hill counterclaimed, seeking a declaratory judgment that the agreement could be terminated because Larken's breaches were incurable and the notice and opportunity-to-cure provisions were not Pine Hill's exclusive means to terminate the contract.

In the Minnesota litigation, the Minnesota district court ruled that Pine Hill could not terminate the agreement. That court applied Minnesota contract law and concluded that the core purpose of the Minnesota management agreement was to make a profit. The hotel was profitable, so the purpose of the agreement was fulfilled, according to the

court. Therefore, any breaches of the agreement by Larken were not so material as to give Pine Hill the right to terminate without notice and the right to cure. The Iowa district court, relying on the Minnesota ruling, applied collateral estoppel and reached the same conclusion as to the Iowa agreement. Pine Hill contends this was error.

We do not believe, as the Minnesota court apparently did, that profitability of the enterprise should be the sole touchstone for resolving the parties' termination rights. While profitability is a significant purpose of the management agreement, the honesty of the parties is also an integral, although unexpressed, component of the agreement. We are not bound by principles of res judicata to reach the same legal conclusions as a court in another state, applying its own law. *See* Allan D. Vestal, *Res Judicata/Preclusion* V—250 (1969) ("Generally ... it would seem that there is complete freedom to examine any point of law regardless of an earlier decision."); 50 C.J.S. *Judgments* § 970, at 57 (1997).

> A judgment rendered by a court of one state must be a judgment on the merits in order to be entitled to recognition and enforcement in other states, and if it is a judgment on the merits, it will be given full faith and credit.... A judgment denying recovery because the laws of the state do not provide a remedy for the wrong alleged will not bar recovery in another state which does provide a remedy.

50 C.J.S. *Judgments* § 970, at 57 (footnotes omitted). Moreover, the acts of the manager in Minnesota giving rise to the attempted termination there were not the same acts complained of in Iowa. The "identity of issues" required for collateral estoppel is therefore lacking. *See Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998).

We reject Larken's collateral estoppel argument and proceed to resolve the issues in this case without regard to the Minnesota judgment.

## II. *The Merits.*

The substantive issue is whether a contract may be terminated for a breach of

an unexpressed duty of honesty and fidelity in the face of express contract language that requires notice and right to cure before termination. This is apparently an issue of first impression in Iowa.

The Pine Hill–Larken agreement provides for notice and the right to cure before termination:

16.01 <u>Termination; Notice to Licensor.</u> Any [violation] of this Agreement may constitute grounds for termination of the License Agreement. At least thirty (30) days prior to any termination of this Agreement, written notice thereof must be delivered to Licensor....

16.02 <u>Termination for Cause.</u>

(a) Upon the occurrence of an Event of Default in any of Articles 15.01(a), (e), (f) or (g), this Agreement shall terminate if the defaulting party fails to remedy such Event of Default within thirty (30) days after receipt of notice to remedy; provided that if such Event of Default be of a non-monetary nature and cannot be reasonably cured within said thirty (30) day period, then said thirty (30) day period shall be deemed to be extended for such additional period as may be reasonably necessary to promptly cure said Event of Default....

However, the management agreement suggests that the procedure with notice and the right to cure is not the only remedy available to a party. The agreement also provides:

16.02 <u>Termination for Cause.</u>

....

(d) The terms of this Article shall not be deemed to preclude or impair the right of any party to exercise any right or remedy, whether for damages, injunction, specific performance, or otherwise, upon any breach of any terms of this Agreement.

Pine Hill relies on section 16.02(d) in arguing that termination after notice and an opportunity to cure is not the exclusive remedy. Larken counters that this interpretation renders the notice and opportunity to cure provision meaningless. Instead, Larken argues, section 16.02(d) "merely clarifies that the power to effect a *termination* does not 'preclude or impair' *other* remedies in place of or in addition to terminating the agreement, such as for damages or injunctive relief."

Larken also argues that the management agreement lists the breaches for which notice and opportunity to cure are not required. Those breaches include a party's voluntary or involuntary dissolution, filing for appointment of a receiver, filing of a voluntary petition in bankruptcy, or otherwise admitting in writing an inability to pay debts. The type of breach claimed here, self-dealing, is not listed as a basis for termination without notice.

The district court found that Larken had breached the agreement in several respects. It found that Holiday Inn employees purchased a dryer, a large screen television, cedar siding, and garage door repair services for personal benefit. Employees retained rebates for personal use on goods ordered for Holiday Inn purposes, and Larken failed to obtain Pine Hill's approval for three separate purchases totaling $37,320. On appeal Pine Hill focuses primarily on two breaches: Larken entered into an unauthorized telephone maintenance contract with LDDP, a long-distance telephone provider controlled by Larry Cahill, a principal of Larken. In addition, Pine Hill asserts that Larken misappropriated the rebates that should have been paid to Pine Hill, as owner. Despite the court's finding that these breaches were established, it concluded that Pine Hill was not entitled to terminate the agreement without complying with the notice and opportunity-to-cure provisions. It ruled the primary purpose of the management agreement was to make money for the owner, and because the hotel had not lost its profitability, the essential purpose of the contract was intact.

Pine Hill contends it may terminate the contract if a breach goes to the essence or fundamental purpose of the contract, and dishonesty falls in that category. Pine Hill supports this argument with several authorities, including *Olin v. Central Industries, Inc.*, 576 F.2d 642, 648 (5th Cir.1978). In that case, an Olin franchisee, Central Industries, Inc., had illegally short-filled fifty-pound bags of fertilizer produced by Olin.

Central kept the difference. Olin terminated the agreement without notice or right to cure as provided by the franchise agreement. The federal court in *Olin*, anticipating what Mississippi law would be (because Mississippi had not yet passed on the question), said:

> [W]e hold that the termination provision in the Olin–Central agreement did not provide the exclusive means of termination in the event of a material breach which had the effect of substantially defeating the purpose of the contract.

*Olin*, 576 F.2d at 648. A similar case, *Southland Corp. v. Mir*, 748 F.Supp. 969, 983 (E.D.N.Y.1990), also involved a claim of fraud perpetrated by a franchisee. The court stated:

> It is clear that the termination and curing provision grants Southland the right to terminate and deny the franchisees the right to cure for substantial violations.... That the list in the provision of events and violations that are not curable fails to refer to fraud does not preclude the parties having intended that termination for fraud was without the right to cure:
>
> > "Unless a contract provision for termination for breach is in terms exclusive, it is a cumulative remedy and does not bar the ordinary remedy of termination for 'a breach which is material, or which goes to the root of the matter or essence of the contract.'"

*Southland Corp.*, 748 F.Supp. at 983 (quoting *Olin*, 576 F.2d at 647).

On the question of whether a party may terminate for certain breaches without notice and right to cure, one authority has said:

> It seems to the present author that *Olin* presents just such a case where Olin could have terminated as it did even despite contract provisions that the 90 days notice be *exclusive*. The notice provision assumed that the breaches which would be used to terminate the contract would be *curable* breaches. There was a *frustration of purpose* when a breach involving funda-

mental dishonesty by one party occurred, because no amount of payment for past thefts by Central could ever restore the business trust and confidence which Olin wanted to have in its distributors.... Under the circumstances, then, Central's breach was a *vital* breach, it would have been sufficient to allow Olin to rescind the contract even if the contract had been in terms an absolute one for a fixed term with *no right of termination at all*; it seems strange to suggest that the right of immediate termination is lost because the parties expressly provided a means of terminating for lesser, curable breaches.

6 Lawrence A. Cunningham & Arthur J. Jacobson, *Corbin on Contracts* § 1266, at 23 (1997 Supp.) [hereinafter *Corbin*].[1]

Other jurisdictions have adopted a similar rule. *See, e.g., L.K. Comstock & Co. v. United Eng'rs & Constructors*, 880 F.2d 219, 232 (9th Cir.1989) (adopting *Corbin's* position on incurable breaches of contracts with exclusive notice and cure provisions); *Blue Bell, Inc. v. Western Glove Works, Ltd.*, 816 F.Supp. 236, 243 (S.D.N.Y.1993) ( "[D]ebate over whether a termination provision with notice and cure requirements in a contract makes termination without notice and cure impossible seems to have ended in favor of the view that fraud may entitle one party to recision regardless of notice and cure, but it turns on the quality of the fraud."); *Lanvin v. Colonia, Inc.*, 739 F.Supp. 182, 195 (S.D.N.Y.1990) ("Unless a notice provision is exclusive, however, it is only a cumulative remedy and does not bar the ordinary remedy of termination without notice for a breach which is material or which goes to the root or essence of the contract."); *D.C. Films, Inc. v. Best Film & Video Corp. (In re Best Film & Video Corp.)*, 46 B.R. 861, 875 (E.D.N.Y. 1985) (when breach was incurable, film company had right to rescind contract even though notice was required and even if the contract had no termination provision at all); *see also Leghorn v. Wieland*, 289 So.2d 745,

---

1. The view expressed by "the present author" is apparently so identified in order to clarify the view of the original author of *Corbin,* who had stated:

> The time and manner of exercising a power of termination may be specified in the contract; in such case an attempt to exercise it otherwise will be ineffective.
>
> 6 *Corbin* § 1266, at 65 (1962).

748 (Fla.Dist.Ct.App.1974) ("[I]f the breach was so grave as to be irreparable and incurable, the giving of notice would be a useless gesture."); *Young Travelers Day Camps, Inc. v. Felsen,* 118 N.J.Super. 304, 287 A.2d 231, 237 (N.J.Dist.Ct.1972) (when notice provision in contract benefited both parties, it was not the exclusive method of terminating contract in which breach could not be remedied).

An analogous case in this court, *Craig Foster Ford, Inc. v. Iowa Department of Transportation,* 562 N.W.2d 618 (Iowa 1997), involved the termination of a franchise agreement because of alleged dishonesty by the franchisee. The plaintiff, Craig Foster Ford, Inc., was a franchisee under Ford Motor Company and had dealerships in two Iowa towns. Ford terminated the franchise because of false rebate claims exceeding $25,-000. Iowa Code section 322A.2 provides that a franchise for a motor vehicle dealership may be terminated only for "good cause." In turn, section 322A.15 provides eight guidelines to be used in determining whether good cause exists. The first six guidelines pertain to financial matters. The seventh consideration pertains to failure by the franchisee to substantially comply with the requirements of the franchise. The eighth consideration, which is the most pertinent to the present case, provides that another consideration is

> bad faith by the franchisee in complying with those terms of the franchise which are determined by the department of inspections and appeals to be reasonable and material.

Iowa Code § 322A.15(8). In the administrative hearing, the franchisee stressed its financial success and the resulting benefits to the communities, thereby largely satisfying the requirements of the first six considerations under section 322A.2. (The financial success of the venture is what Larken stresses here; the purpose of the management agreement is to make money. Because Larken has made money for the owner, other considerations are secondary, according to it.)

In *Craig Foster Ford* the administrative law judge placed greater weight on the nonfinancial considerations and concluded that Ford had good cause to terminate the franchise. On appeal we observed:

> Foster's dispute lies with the emphasis accorded factors (7) and (8) by the ALJ and district court. The dealership insists on appeal that each of the eight factors should carry equal weight, thus giving it a winning score of six to two. Foster's tally makes little sense, however, where the defining interests are, on the one hand, profitability, and, on the other hand, good faith and fair dealing. At least one other court has observed in similar circumstances that positive factors—such as increased sales—cannot outweigh findings of pervasive fraud in a dealership's service department. *Chesapeake Ford, Inc. v. Ohio Motor Vehicle Dealers Bd.,* 103 Ohio App.3d 515, 660 N.E.2d 481, 485 (1995).
>
> We are convinced that section 322A.15 calls for a qualitative rather than quantitative analysis.... A poor showing on factors (1) through (6) would signal financial and service weaknesses, problematic for the franchiser and public alike. Factors (7) and (8), by contrast, would reveal a breakdown in the parties' good-faith adherence to the terms of their franchise.

*Craig Foster Ford,* 562 N.W.2d at 623. We upheld the termination.

In *Wheeler v. Waller,* 197 N.W.2d 585 (Iowa 1972), we said that "[the] duty of good faith is not limited to the familiar categories such as partnership, joint venture, and agency; it permeates the law wherever a relationship of trust and confidence exists." *Wheeler,* 197 N.W.2d at 587.

We conclude that the acts of self-dealing found by the district court were so serious that they frustrated one of the principal purposes of the management agreement, which was to manage the hotel in the best interests of the owner and to be honest and forthright in its dealings. Self-dealing is the antithesis of that purpose, and it violates the relationship of trust necessarily underlying such agreements.

Larken's breach of its implied duty of honesty and fidelity went to the heart of the contract. Merely requiring Larken to retroactively undo its wrongdoings, as Larken

urges, would not be an adequate remedy. As *Corbin* observed in discussing *Olin,* "no amount of payment for past thefts by [the franchisee] could ever restore the business trust and confidence which [the franchisor] wanted to have in its distributors." *Corbin* § 1266, at 23.

We conclude the district court erred in denying Pine Hill its right to terminate this agreement based on Larken's acts of self-dealing. We reverse and remand to the district court for entry of judgment accordingly.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., who takes no part.