## IN THE COURT OF APPEALS OF IOWA

No. 19-0639
Filed November 30, 2020

**CRAIG WILLIAMS,**
 Plaintiff-Appellant,

**vs.**

**POCAHONTAS FORD-LINCOLN, INC.,**
 Defendant-Appellee.
_____

 Appeal from the Iowa District Court for Pocahontas County, Kurt J. Stoebe,

Judge.


 Plaintiff appeals the district court's ruling that denied his claims of breach of

an employment contract and failure to pay wages. **AFFIRMED AND REMANDED.**


 Charles Gribble and Christopher Stewart of Gribble, Boles, Stewart &

Witkosky Law, Des Moines, for appellant.

 Mitchell R. Kunert of Nyemaster Goode, P.C., Des Moines, for appellee.


 Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

Craig Williams appeals the district court's ruling that denied his claims of breach of an employment contract and failure to pay wages under Iowa Code chapter 91A (2017). We affirm the district court's decision finding the employer did not breach the parties' employment agreement and that Williams is not owed any unpaid wages. We remand for a calculation of the reasonable trial and appellate attorney fees incurred by the employer.

## I. Background Facts & Proceedings

Pocahontas Ford Lincoln, Inc. (PFL) is a car dealership in Pocahontas, Iowa. The company has 1800 shares, which were valued at $550 per share, for a total value of $990,000. Gustave Holzmueller is the majority shareholder, owning 900 shares.[1] Holzmueller worked at PFL, as did his wife, Beverly Holzmueller (Beverly).

In 2013, Holzmueller and Beverly were interested in selling PFL and retiring. Williams is the son-in-law of Beverly's sister. He contacted Holzmueller to express an interest in buying PFL, although he had no experience as a car dealer and did not have the finances to purchase the company. Holzmueller stated Williams would be able to get a low-interest loan and could gradually purchase shares. In June 2013, Williams, his wife, and his daughter moved from Las Vegas, Nevada, to Pocahontas. Williams began working as a salesman at PFL in order to learn about the business.

---

[1] The other shareholders were Bernie Rost, Del Rost, and Colleen Kaiser.

Williams and PFL entered into an employment agreement for a term of five years beginning January 1, 2014. The contract gave Williams five vacation days each year and no sick leave. It gave Williams the right to purchase stock in PFL but did not require him to do so.

The employment agreement provided:

3.      Term and Termination.
        (a)     . . . .
        (b)     The Company and Employee may terminate this Agreement at any time upon at least ninety (90) days prior advance notice given to the other Party.
        (c)     The Company may terminate this agreement at any time . . . upon either (A) the occurrence of a material breach of Employee's duties under this Agreement, or (B) for Cause (as such term is defined below).
        For purposes of this Agreement, "Cause" shall mean that any one or more of the following has occurred and, with the exception of clause (i) and (iv) below (which shall not be subject to a cure period), is continuing to occur following receipt of notice by Employee from the Company of its occurrence for fifteen (15) days with respect to clause (ii) below, and thirty (30) days with respect to clause (iii) below:
                (i) Employee shall have been convicted by a court of competent jurisdiction of, or pleaded guilty or *nolo contendere* to, either (A) any felony, or (B) any crime involving fraud, embezzlement or misappropriation . . . ; or
                (ii) Employee shall lose or have revoked (A) any license required for Employee to conduct business for the Company, or (B) Ford's approval of Employee as an approved Ford dealer and/or an owner with managerial authority, as such terms are defined by Ford; or
                (iii) Employee shall have engaged in either (A) willful or material misconduct relating to the duties incident to his employment with the Company, or (B) willful or material failure to perform, or chronic neglect of, the duties incident to his employment with the Company; or
                (iv) Employee's death or disability.

The employment agreement stated Williams's employment was "pursuant to the terms and conditions of this Agreement and any employee handbook." The employee handbook lists minor and major offenses that could cause disciplinary

action. Major offenses included "Abusive treatment of others (physical and/or verbal)"; "Physical violence"; and "Possession of an illegal weapon," among other offenses. The handbook stated that for major offenses, a person would receive a written warning for a first offense and would be terminated for a second offense. The handbook also states, "The management reserves the right to bypass any step in the procedure when s/he considers that the seriousness of the offense warrants it."

At the same time Williams and PFL entered into the employment agreement, they entered into a stock purchase agreement that gave Williams the right to purchase shares in PFL. He purchased twenty-four shares of stock in 2014.

Williams attempted to get financing from a bank to purchase the company but was unable to obtain a loan in a sufficient amount. Williams and his family expressed an interest in returning to Las Vegas. Although Williams did not purchase any additional shares in PFL, he continued to work there as a salesman. Williams initially did well and received bonuses for his work.

At the end of 2016 and the beginning of 2017, Williams missed some periods of work because he was suffering from diverticulitis.[2] Williams had surgery in April 2017 and returned to work on May 1. Holzmueller informed Williams that sales had slowed in 2017 and the company was not doing well financially. Williams was scheduled to go on vacation from June 6 to 15. According to Williams, he

---

[2] Williams testified he became depressed due to the pain from diverticulitis and his inability to find employment in Las Vegas. He did not obtain a medical diagnosis of depression and did not seek treatment for the condition. Holzmueller and Beverly testified Williams discussed committing suicide.

asked Holzmueller if he should still take his vacation and Holzmueller told him to go. However, Holzmueller stated he asked Williams not to go on vacation due to the dealership's financial situation and the decrease in sales.

On June 5, the day before he was to leave, Williams told Holzmueller that unless he got a real vacation, he was going to go to a water tower and start shooting. Williams stated he said this as a joke and such was in reference to an ongoing joke between himself and Holzmueller. Holzmueller testified Williams stated he would start shooting people from the top of a grain elevator, which was next to the car dealership. Holzmueller denied there was an ongoing joke on the matter.[3] He became concerned and contacted the sheriff's department. Williams left on his planned vacation on June 6.

On June 12, while Williams was away, Holzmueller held a meeting with the other shareholders. The record in this case included an audio recording of the meeting. Beverly was not a shareholder but acted as the secretary for the meeting. Holzmueller discussed Williams's statement about shooting from a tower and noted Williams owned several guns. The shareholders decided to terminate Williams's employment based on the failure to purchase additional shares in the company, poor job performance, and absenteeism. The written minutes state, "'Craig A. Williams['s] employment contract will be terminated for Cause; i.e. the occurrence of a material breach of Employee's duties under the Agreement.' (3.c.)." The written minutes do not include any statements about Williams's threat to start shooting, but the audio recording reflects discussion of the threat.

---

[3] Holzmueller also testified he was aware that Williams owned semi-automatic weapons.

Holzmueller further relayed to the other shareholders that arrangements had been made with the sheriff to be present at the time of termination. Concerns were expressed by more than one shareholder about Williams returning with a gun. Beverly testified she did not include the discussion in the written minutes because she did not want to cause Williams difficulty in obtaining a new job.

Williams returned to work on June 16. He was fired by Holzmueller that day. Williams was not told a reason for his termination at that time. Beverly testified that she mailed Williams a copy of the written minutes, but Williams stated he never received it. Williams did not perform any work after June 16, but he was paid for an additional two weeks. He also received a bonus of $5000 for the quarter ending on June 30. PFL purchased the twenty-four shares of stock held by Williams. Williams and his family moved back to Las Vegas, and he resumed working for his former employer.

On August 27, 2017, Williams filed an action against PFL, claiming breach of his employment contract and failure to pay wages under Iowa Code chapter 91A. After a bench trial, the district court entered a ruling on April 18, 2019.[4] The

---

[4] Williams argues that our court should scrutinize the record more carefully because of the use of the proposed findings of fact and conclusions of law by the district court and the almost verbatim adoption of PFL's filing. Our supreme court has recognized the crucial role district courts play in making credibility determinations. *See Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 266 (Iowa 2002). It has also found that "our ability to apply the usual deferential standard is undermined by the court's verbatim adoption of [a party's] proposed factual findings and legal conclusions" and has cautioned district "courts about the perils of such practice." *Id.* "[T]he customary deference accorded [district] courts cannot fairly be applied when the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles." *Id.* (citing *Phoenix Engineering & Supply Inc. v. Universal Electric Co.*, 104 F.3d 1137, 1140 (9th Cir. 1997), for the proposition that where a district court adopts one party's proposed findings, close

district court found Holzmueller and Beverly were credible witnesses. The court determined Williams's statement about shooting people from the grain elevator "triggered the meeting and the termination of Williams's employment." The court concluded Williams was terminated for a material breach of his employment duties and so was not entitled to notice, and therefore there was no breach of the employment contract by PFL. The court also found PFL did not owe Williams any unpaid wages. The court found PFL was entitled to attorney fees. Williams appealed the district court's decision.

## II.     Breach of Contract

Williams contends PFL breached the employment contract by terminating him without giving him notice and the opportunity to correct his behavior, which he asserts was required by the terms of the contract.

In order to prevail on a claim of breach of an employment contract, a plaintiff must prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [he] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 657–58 (Iowa 2008) (alteration in original) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*,

---

scrutiny of the record is required). Although our supreme court has refused to adopt a higher standard of review in such cases, it has instructed that "we must scrutinize the record more carefully when conducting our appellate review." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010); *see also Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 97 (Iowa 2011). We apply the supreme court's mandate in review of this record.

578 N.W.2d 222, 224 (Iowa 1998)). "The question of whether the plaintiff has proved a breach of contract is for the judicial fact-finder." *Id.* at 658.

For breach-of-contract actions, our review is for correction of errors at law. *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). We are bound by the district court's factual findings if they are supported by substantial evidence in the record. *Id.*

Williams states the shareholders voted to discharge him for cause, citing (1) failure to purchase additional shares of the company, (2) poor job performance, and (3) absenteeism. Williams states that these items do not meet the definition of "cause" in the employment contract. He also states that to the extent the items could be considered "willful or material misconduct relating to the duties incident to his employment" or "willful or material failure to perform, or chronic neglect of, the duties incident to his employment" under section 3(c)(iii) of the contract, he should have been given notice and then could only be discharged if the conduct continued for thirty days.

The written minutes from the meeting state, "Craig A. Williams['s] employment contract will be terminated for Cause; i.e. the occurrence of a material breach of Employee's duties under the Agreement." Holzmueller and Beverly testified they did not use the term "cause" as it was defined in the employment agreement but used it to mean the reason for Williams's discharge.[5] The district court found this explanation credible. "As the finder of fact, weighing the proffered

---

[5] The term "cause" may mean "the reason or motive for some human action." *Cause*, https://www.dictionary.com/browse/cause (last visited Nov. 18, 2020).

testimony and determining its credibility was the district court's duty." *Hutchison v. Shull*, 878 N.W.2d 221, 230 (Iowa 2016).

Additionally, the language of the written minutes makes sense if the term "cause" means reason, so the minutes state in effect that the reason for Williams's termination is the occurrence of a material breach of his duties under the contract. Using the definition of "cause" in the contract, the statement that Williams was terminated for cause, which was the occurrence of a material breach, does not make sense as "the occurrence of a material breach of Employee's duties under this Agreement," and "Cause" are two different things and a material breach is not a "cause" listed in the contract. *See Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." (alteration in original) (quoting *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 26 (Iowa 1978)).

Furthermore, Holzmueller and Beverly testified Williams was discharged from his employment at PFL based on his statement that if he did not get a real vacation, he would go to the top of a water tower or grain elevator and start shooting people. Williams made the statement to Holzmueller, who became very concerned and called the sheriff. Taken in the context of the discussions between Williams and Holzmueller about whether Williams should take his vacation scheduled for the next day, the statement can be interpreted as a threat of physical violence if Holzmueller prohibited Williams from leaving. According to the employee handbook, the regular multi-step disciplinary process could be bypassed

based on the seriousness of an offense. The threat of physical violence is in line with other actions considered major offenses, and based on the seriousness of the threat, PFL could bypass giving Williams a written warning prior to terminating his employment.

Under the contract, there is no provision for notice prior to discharge when an employee is discharged based on the occurrence of a material breach of the employee's duties. We find no error in the district court's conclusion that Williams's threat of physical violence was a material breach of his employment duties. Therefore, the employment contract did not require notice to Williams before he was discharged from his employment. PFL did not breach the employment agreement when it terminated Williams's employment.

Further, even if PFL needed to comply with notice under paragraph 3(c), PFL could bypass that notice if Williams's actions went to the "essence or fundamental purpose" of the contract. We find, based on the record, that Williams's statements threatening to climb to the grain elevator and start shooting went to the essence or fundamental purpose of the contract. The district court relied on this alternate theory, set forth by the supreme court in *Larken, Inc. v. Larken Iowa City Limited Partnership*, 589 N.W.2d 700, 702–04 (Iowa 1998). We agree with the district court's findings that it would be reckless to require PFL to give Williams an opportunity to cure, allowing him to remain in the workplace.

### III. Chapter 91A

Williams claims PFL owes him wages under chapter 91A, the Iowa Wage Payment Collection Law. *See* Iowa Code § 91A.1. He asserts PFL improperly terminated his employment under the terms of the employment agreement and he

is owed wages, bonuses, and benefits for the remainder of the five-year term of the contract. We review claims under chapter 91A for the correction of errors of law. *See Gabelmann v. NFO, Inc.*, 571 N.W.2d 476, 483 (Iowa 1997).

Chapter 91A "imposes liability only when the employer fails to pay the amount of wages actually due to the employee." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 596 (Iowa 1999). An employee has no claim for nonpayment under chapter 91A unless wages are actually owed to the employee. *See Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997) (citing Iowa Code § 91A.8).

Williams has not shown any wages are due to him that PFL failed to pay. For this reason, the wage collection provisions of chapter 91A do not apply. PFL properly terminated Williams's employment on June 16, 2017, and Williams was paid for all of his services prior to that date. Williams has not shown any additional wages are owed to him.

### IV.    Damages

Although the district court found Williams was not entitled to any damages, the court discussed Williams's claims concerning the amount of damages he asserted should be awarded. We find Williams was not successful on his claims regarding breach of contract or unpaid wages under chapter 91A. We do not further analyze his various arguments concerning the amount of damages he believes should have been awarded.

### V.    Attorney Fees

Lastly, Williams argues even if he was not entitled to notice prior to discharge, the district court erred in awarding attorney fees to PFL. The district

court determined PFL should be awarded reasonable attorney fees and costs.[6]

Williams contends the employment agreement did not provide for the award of attorney fees under the circumstances in this case.

The employment agreement states:

> Indemnification.  Employee shall defend, indemnify and hold the Company and its respective shareholders, directors, officers, employees and agents harmless from and against any suit, action, proceeding, demand, claim, counterclaim, loss, liability, damage, cost or expense, including court costs and attorneys' fees, in any way arising in connection with or resulting from any breach or non-fulfillment of, or default under, any term or condition of this Agreement by Employee.  The Company shall recover from Employee its reasonable attorneys' fees and costs incurred to enforce or remedy any breach of this Agreement by Employee, including, but not limited to, a breach of Section 4 or Section 5.

The employment agreement provided that PFL could recover from Williams the reasonable attorney fees and costs the company incurred "to enforce or remedy any breach" of the employment agreement by Williams.  Williams breached the employment agreement by making a threat to shoot people, which was a material breach of his duties under the agreement.  Under the terms of the employment agreement, PFL could then recover its attorney fees and costs from Williams.

"When a contract contains a clear and express provision regarding attorney fees, the court's award must be for reasonable attorney fees."  *NevadaCare*, 783

---

[6] The amount of attorney fees and costs has not yet been determined.  PFL was ordered to submit an itemization of fees and costs within thirty days.  Before PFL submitted an itemization of its fees and costs, however, Williams filed a notice of appeal.  The issue on appeal concerns whether attorney fees could be awarded, not the amount of an attorney fee award.  We conclude the issue raised on appeal is not interlocutory in nature.  *See Virginia Manor, Inc. v. City of Sioux City*, 261 N.W.2d 510, 513 (Iowa 1978) (finding a ruling that merely preserved the right to bring a claim for attorney fees in the future was a final appealable decision).

N.W.2d at 470. We determine the district court may properly award PFL reasonable attorney fees under the terms of the employment agreement. We remand for a calculation of PFL's reasonable trial and appellate attorney fees and costs.

We affirm the district court's decisions finding PFL did not breach the parties' employment agreement and that Williams is not owed any unpaid wages. We remand for a calculation of the reasonable trial and appellate attorney fees incurred by PFL.

**AFFIRMED AND REMANDED.**